Waldemar **QUILES RODRIGUEZ,**
et. al. **Plaintiffs,**

v.

Hon. Sila **CALDERON,**
et. al. **Defendants**

**No. 01–2446 (JP).**

United States District Court,
D. Puerto Rico.

Nov. 7, 2001.

Fernando L. Gallardo, Woods & Woods, San Juan, PR, for Plaintiff.

Salvador J. Antonetti–Stutts, Department of Justice of P.R., Federal Litigation Division, San Juan, PR, for Defendant.

**OPINION AND ORDER**

PIERAS, Senior District Judge.

**I.**

The Court has before it Plaintiff's Verified Complaint (docket No. 2), and Defendant's Opposition thereto and Motion to Dismiss (docket No. 6). Plaintiffs seek a Preliminary as well as a Permanent Injunction to prevent the Governor of Puerto Rico from removing the Chair of the Public Service Commission ("PSC") before his term for occupying said position expires. For the foregoing reasons, the Preliminary Injunction is **DENIED.**

**II. JURISDICTION**

Plaintiffs have brought forth this action seeking injunctive relief to enjoin the Governor of Puerto Rico, the Honorable Sila M. Calderón, from removing Plaintiff from his position as Chair of the PSC before his term expires. Plaintiffs' claims arise under 42 U.S.C. § 1983, and alleged violations their First and Fourteenth Amendments rights under the U.S. Constitution. This Court, therefore, has jurisdiction to hear this claim pursuant to 28 U.S.C. 1331 (West, 2000).

**III. FINDINGS OF FACT**

1. Plaintiff Waldemar Quiles is the current Chairman of the Public Service Commission.

2. On December 16, 2000, Mr. Quiles was confirmed by the Senate of Puerto Rico, substituting the previous Chair, Ms. Nydia E. Rodríguez Martínez, and on December 18, 2000, he was sworn in a such.

3. Under the enabling statute, Mr. Quiles is entitled to hold that position until September 28, 2002, the date when his predecessor's term would have expired [1].

---

**1.** *See* 27 P.R. Laws Ann., § 1052 (2000), which states that any person chosen to fill a vacancy shall only serve in said vacancy until the term of the Commissioner who he/she is replacing expires. Mrs. Rodriguez's term was to expire on September 28, 2002. Therefore, Mr. Quiles can only serve until that same date.

4. The Chair of the PSC receives a higher salary than the other four (4) Commissioners.

5. In January, 2001, Governor Calderón's Chief of Staff, Mr. César Miranda, met with Mr. Quiles and inquired as to time remaining in his term, to which Mr. Quiles answered that he intended to finish said term.

6. Last September, 2001, the terms of three (3) Commissioners expired in the PSC, and Governor Calderón nominated three new persons to fill out the new positions.

7. The Governor submitted the names of her appointees to the Senate for confirmation per the enabling statute [2].

8. On October 19, 2001, Mr. Miranda sent a letter to Mr. Quiles in which Mr. Miranda informed Mr. Quiles that Governor Calderón intended to replace Mr. Quiles as Chair of the Commission with attorney José M. Hernández Pérez.

9. Mr. Miranda informed Mr. Quiles in the letter that Mr. Quiles would remain in the Commission as a Commissioner, but not as its Chair.

10. On October 26, 2001, Plaintiff and his wife, María del Carmen Llanes Medina, brought forth the present suit seeking a Temporary Restraining Order, a Preliminary and a Permanent Injunction to maintain the *status quo* during the pendency of the case, as they believed Mr. Hernández was about to be confirmed as Chair of the PSC.

11. Plaintiffs also brought forth claims under 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights.

12. Plaintiffs also seek punitive damages, costs, expenses and attorneys fees.

13. On October 26, 2001, the Court granted the Temporary Restraining Order that prevented the Governor and Mr. Miranda from appointing any other person to Mr. Quiles' position, or from otherwise interfering with Mr. Quiles' functions as Chair, for a period of ten (10) days.

14. The Court also set a date to hear the parties' oral arguments in the case.

15. On November 2, 2001, the Court heard arguments from both parties, as well as testimony from Ms. Elena Ocasio Rivera and Plaintiff himself, as witnesses for Plaintiffs.

16. After said arguments, and as agreed to by the parties, the Court ordered the Temporary Retraining Order be extended for an additional three (3) days, until November 7 at 6 p.m.

17. Said Order also stated that on that same date, the Court would issue this Opinion and Order determining whether it would issue the Preliminary Injunction against the Honorable Governor of Puerto Rico, Sila M. Calderón and Mr. César Miranda.

18. All the documentary evidence necessary to decide this case was submitted untranslated by Plaintiffs during the November 2, 2001 hearing.

19. As of November 5, 2001, no certified translations of any or all of the documentary evidence had been filed.

## IV. PRELIMINARY INJUNCTION STANDARD

For injunctive relief to issue, the party seeking the preliminary injunction must establish that: (1) there is a substantial likelihood of success on the merits of the claim; (2) absent the injunction, there is a significant risk of irreparable harm;

---

**2.** 27 P.R. Laws Ann., § 1052 (2000), that the Governor shall have the power to appoint members of the commission, subject to confirmation by the Senate.

(3) the balance of hardships weighs in its favor; and (4) granting the injunction will not harm the public interest. *See Lanier Professional Services, Inc., v. Ricci,* 192 F.3d 1 (1st Cir.1999).

## V. CONCLUSIONS OF LAW

In examining whether Plaintiffs have a substantial likelihood of success on the merits, the Court will simultaneously examine the allegations set forth in Defendant's Motion to Dismiss, since they go to the heart or Plaintiff's case. The Court has opted to analyze the law in this fashion simply because the standard that Plaintiffs must surpass in order to succeed on their preliminary injunction claim, likelihood of success on the merits, is higher than the one they must surpass in order to defeat a motion to dismiss.

### A. *Preliminary Injunction Standard*

### 1. *Substantial Likelihood of Success on the Merits*

Defendants allege that 1) the law regarding whether the Governor may remove Mr. Quiles from his term position is unclear, and 2) that since it is a matter of important state law, the Court must either abstain from the case as set forth in *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) while the Puerto Rico state court resolves the question, or in the alternative, to submit the question to the Puerto Rico Supreme Court for certification.

■ Under both the *Pullman* Abstention and Certification, a Court must not undertake to resolve the issue(s) in the case if the state law is patently unclear. *Ford Motor Co. v. Meredith Motor Co., Inc.,* 257 F.3d 67 (1st Cir.2001), *Medical Prof'l Mut. Ins. Co. v. Breon Labs., Inc.,* 141 F.3d 372 (1st Cir.1998). The applicable law in this case is exceptionally clear regarding the position's term limits—it specifically states that any person desig-

nated as a replacement can only serve the remaining term of the outgoing commissioner he/she is replacing. 27 P.R. Laws Ann. § 1052 (2000). The statutory language is thus clear and unambiguous.

■ It has been clearly established that in construing a statute, a reviewing court must look first to the statutory language. "If the language is clear and unambiguous, judicial inquiry is at an end in all but the most extraordinary circumstances, and the court must give effect to the clear meaning of the statute as written." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). *See also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976) (When the Court finds the statutory language to be unambiguous, its clear meaning is controlling and the Court does not need to refer to any other source to interpret its meaning); *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) (The controlling principle of statute interpretation is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written.) (citing *Chevron U.S.A. Inc., v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

The applicable law in this instance, in its pertinent part, reads:

(a) The Commission shall be composed of five Public Service Commissioners, one of whom shall be its Chairman, all appointed by the Governor with the advice and consent of the Senate.

The Commissioners first appointed pursuant to this Part shall hold office for terms of two (2), three (3) and four (4) years, respectively. The term for each one shall be fixed by the Governor, but their successors shall be appointed for a term of four (4) years. Any person cho-

sen to fill a vacancy shall be appointed only for the unexpired term of the Commissioner whom he succeeds.

27 P.R. Laws Ann. § 1052 (2000).

 The law clearly states both the Governor's power of *appointment* and the *terms of service* for the commissioners, which includes its Chairman. In the case at bar, the previous Governor appointed Mr. Quiles as Chairman of the Commission to fill the unexpired terms of the previous chairman who resigned. The Court concludes, as a matter of law by reading the clear language of the statute, that he cannot be removed by the current Governor until the end of his term in September, 2002. There is no need to further interpret this statute-it being patently clear that Mr. Quiles must be allowed to serve as Chairman until the end of his term. Consequently, the Court does not see a need for it to abstain or to certify this issue to the Puerto Rico Supreme Court, since the law is patently clear.

### a. *Legislative history*

Although the Court has no duty to look at the Legislative History of this law, it has nevertheless examined it. The Court found that, first and foremost, the lawmakers considered the Commission to be independent from both the legislative and the executive branches of the government.

During its debate, the Puerto Rico Senate made reference to a study undertaken by the state Government of Hawaii in 1961 and found that, "Increasingly, since the turn of the century, jurisdiction over the activities of privately-owned public utilities has been assigned to commissions which usually operate somewhat independently of both the executive and the legislative branches of government." XV DIARIO DE SESIONES; PROCEDIMIENTOS Y DEBATES DE LA ASAMBLEA LEGISLATIVA P.S. 54, 540 (daily ed. March 28, 1962). Additionally, it was important to the legislators that terms be established in the law, so as to address continuity and optimal working conditions in the Commission. The legislature stated, when they spoke about establishing terms, that, "...the complexity of the functions of a public service commission...cannot be carried out on the basis of sporadically hired-for services, it is a function that must be carried out by people totally dedicated to it." *Id.* at 541. (Court translation).

In addition, the Senate spoke of the importance of maintaining the Commission free from political strife: "...whether a person belongs to a political party or not is not the prerequisite necessary to be a good member of a public service commission" XV DIARIO DE SESIONES; PROCEDIMIENTOS Y DEBATES DE LA ASAMBLEA LEGISLATIVA P.S. 54, 640 (daily ed. April 5, 1962) (Court translation), and that "...Precisely what we are attempting to eradicate is that the political party factor not be an ingredient in the managing of the public interest and fiscalization that the public service corporations of Puerto Rico require." *Id.* (Court translation).

It is evident from the transcripts of the Senate that the terms for the commissioners, as established in the law, were meant to be a safeguard for the commissioners' positions, so that they could carry out their duties until such term ended. These terms were created for sound policy reasons, continuity and good management.

Defendants would have the Court read into the statute something that is not clearly stated there. They would like the Court to interpret the phrase indicating that the Governor can appoint the Chair of the Commission as implying that, since she can appoint the Chair, she can conversely remove the current Chair and appoint one of her own choosing at will. Alternatively, the Court understands Defendants to be

alleging that the Governor also has power of removal of Commissioners, even if that power is not specifically stated in the Statute. The Court finds both these interpretations to be in error.

Defendants would also have the Court understand that the Five Commissioners are of "equal status" in the Commission, and thus, the Governor has the power to designate which of them shall be its Chair. *See Defendant's Motion to Dismiss* at 6. However, a study of the statement of motives (or legislative intent) of the law shows that the only purpose of the 1974 amendment was to change the *work status* of the Commissioners. *Statement of Motives*, Law No. 262, July 30, 1974, P.R. Laws 1974, at 333.

Before the change was enacted into law, only the Chair of the Commission worked full-time. *Id.* The Associate Commissioners worked only part-time. *Id.* However, the Legislature believed that the conditions under which the Commission operated were changing, and that full-time Associate Commissioners were needed. *Id.* Thus, they changed the title and working status of the part-time "Associate Commissioners" to full-time "Commissioners". *Id.* Said change has nothing to do with whether or not the Commissioners have equal status, even less so when it is evident that the Chair is paid a higher salary than the other Commissioners. If they were truly equal, they would all receive the same salary. Thus, Defendants argument is in error.

However, even if Defendant's argument were correct, the text of the law still provides for specific term limits, and the fact of the matter is that Mr. Quiles is being removed from his position before said term limit is over. Thus, Defendants argument has no merit.

b. *Puerto Rico case law*

The Supreme Court of Puerto Rico has extensively debated the issue pertaining to appointment and removal by the Governor of appointees to agencies, as well as the political issues surrounding appointments. The case of *Ramos Villanueva v. Cintrón*, 112 D.P.R. 514 (1982), sets forth the principle that once an employee has established that he is being discriminated against because of political affiliation, the burden shifts to the government to prove that the employees' political affiliation is an "appropriate requirement" for the effective discharge of the duties of his job (citing *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)); *See also Ramos v. Secretario De Comercio*, 112 D.P.R. 514 (1982); *Clemente González v. Depto. de la Vivienda*, 114 D.P.R. 763 (1983).

Indeed, both the majority and the dissenting opinions of *Ramos Villanueva, supra*, extensively discuss the issues of political affiliation as a requisite (or not) for career positions versus trust positions, citing *Elrod, supra* and *Branti, supra*. Specifically, the dissent by Associate Justice Díaz Cruz squarely addressed this issue, when it stated,

> If the department head is of the opinion that the employee's political affiliation is ideologically incompatible with the purposes and goals of the administrator, he (the administrator) will always be at liberty to dismiss him.

*Ramos Villanueva*, 112 D.P.R. at 525–526, 1982 WL 210633. (Court translation).

The total impossibility that the incoming administration will be able to effectively function with agency heads and sub-heads and other trust employees of the outgoing adversary is of common

knowledge, notorious, and existent right now in our political panorama.

*Id.* at 528, 1982 WL 210633. (Court translation).

The Supreme Court of Puerto Rico did not go along with this point of view, and consequently, it is not the law in Puerto Rico.

In the case at bar, the government has not proven, much less set forth, any facts that would indicate why the position of Chairman of the PSC must be of the same political party as the Governor. They merely imply, without further proof, that the Chair of the PSC is a high-level policy making decision that is not protected by the First Amendment, and that it is a position that requires party affiliation. *See Defendant's Motion to Dismiss* at 5. These arguments, without supporting proof thereof, are simply of no importance factually, legally or otherwise.

The Court notes that there have been other occasions where an outgoing governor has nominated, and the Senate confirmed, a Chair for the PSC before the new administration took over. A case on point, for instance, is the one of Mr. Angel Correa Almodóvar, who took oath of office as Chair of the PSC on January 2, 1985, after Carlos Romero Barceló of the New Progressive Party ("NPP") had lost the election and Rafael Hernández Colón of the Popular Democratic Party ("PDP") had won. In the cases where this has happened, the incoming administration has been of a different political party than the outgoing one, and the Court can find no instance where the new Governor has interfered with said appointment.

c. *Federal case law*

Looking to concretely and clearly establish the legal issues presented before it, the Court also looks at the United States Supreme Court regarding this matter. This is due to the fact that, under the Puerto Rico Constitution, the authority of the Governor to carry out appointments is analogous to that of the President of the United States. Op. Sec. Just. No. 3 of 1995, 1 P.R. Laws Ann. Art. IV § 4, n. 7. In addition, it is well established that the executive function of appointing functionaries was incorporated into the Puerto Rican Constitution via federal statute, case law, and doctrine, so it is not uncommon that the Court look to federal case law in its effort to interpret the law and the Constitution to resolve this debate. Op. Sec. Just. No. 25 of 1967; *Id.*

The landmark cases in this area are *Myers v. United States,* 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), *Humphrey's Ex'r v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), and *Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958). The *Myers* case originally stood for the proposition that, under the Constitution, the President of the United States had the exclusive power of removing executive officers of the United States whom he had appointed with the advice and consent of the Senate. *Myers,* 272 U.S. at 52, 47 S.Ct. 21. Less than ten years later, *Humphrey's Executor* effectively limited the Presidential authority to remove officers that held purely executive cabinet posts, and held that the President's removal power did not apply to quasi-legislative or quasi-judicial agencies.

In *Humphrey's Executor,* the President undertook to remove from office a Federal Trade Commissioner, who had been nominated by the previous President, Herbert Hoover, had been confirmed by the Senate, and had been appointed commissioner for a seven-year term. *Id.* at 612, 55 S.Ct. 869. The Commissioner refused to resign at President Roosevelt's request, and subsequently, Roosevelt removed him from his position. *Id.* at 619, 55 S.Ct. 869.

The *Humphrey's* case revolved around the actual "removal for just cause" language as stated in the statute. The Court explicitly stated that they disapproved of the President's inherent constitutional power to remove members of quasi-judicial bodies. *Id.* at 602, 55 S.Ct. 869. The Court came to the conclusion that, even if the President did have the power to remove Mr. Humphreys with just cause, his term could not be curtailed in the absence of such cause. *Id.* at 624, 55 S.Ct. 869. In essence, they held that Mr. Humphrey's term of office could not be curtailed, and therefore, his dismissal before the expiration of said term was illegal. *Id.* The case at bar is clearer still, given the fact that the statute in question delegates absolutely no removal authority to the Governor.

■ *Humphrey's* therefore stands for the proposition that only officers that occupy purely executive positions are subject to the President's power of removal. *Id.* As applied to the case bar, we can only conclude that those occupying term positions in agencies in a quasi-legislative and quasi-judicial functions likewise cannot be removed under any circumstance, except for just cause. *Id.; see generally,* 3 P.R. Laws Ann. § 1336 (2000). It is clear to the Court that Mr. Quiles is not being removed for just cause.

Within this context, *Wiener, supra,* set forth its decision after examining the nature of the body from which the employee had been removed to establish whether or not the President was authorized effectuate such a removal. The Court, upon finding that the War Claims Commission was adjudicatory in nature, upheld the holding in *Humphrey's,* and held that it precluded such a removal from office. *Wiener,* 357 U.S. at 356, 78 S.Ct. 1275.

■ Likewise, the PSC is a quasi judicial body. It holds its own hearings [3]; it can impose sanctions and administrative penalties [4]; can investigate issues and decide to hold hearings [5]; and its investigators have the power to administer oaths, hear testimony, issue summons, and receive evidence, among others [6]. It is evident, therefore, that the PSC is more of a quasi-judicial body than a purely executive body.

In *Wiener,* the Supreme Court stated,

Judging the matter in all the nakedness in which it is presented, namely, the claim that the President could remove a member of an adjudicatory body like the War Claims Commission merely because he wanted his own appointees on such a Commission, we are compelled to conclude that no such power is given to the President directly by the Constitution, and none is impliedly conferred upon him by statute simply because Congress said nothing about it.

*Wiener,* 357 U.S. at 356, 78 S.Ct. at 1279.

The Court concurs with the explicit language in *Wiener,* and therefore holds that, absent specific and explicit language granting removal authority, the Governor cannot remove Mr. Quiles from his term position or otherwise curtail such term until the same expires on its own; that is, in September, 2002. Until the Legislature opts to change the language of this statute, the Court will interpret it as limiting the power of the Governor to remove a term Commissioner, and effectively prohibiting the Governor from removing any term Commissioner until their term expires.

■ Based on this, the Court concludes that Plaintiffs have met the first prong of

---

**3.** 27 P.R. Laws Ann. § 1052 (2000).

**4.** 27 P.R. Laws Ann. § 1108 (2000).

**5.** 27 P.R. Laws Ann. § 1121, 1054 (2000).

**6.** 27 P.R. Laws Ann. § 1054 (2000).

the preliminary injunction standard, since there is a substantial likelihood that they will succeed on the merits of the case. Consequently, this alone is sufficient to defeat Defendant's Motion to Dismiss.

### 2. *Irreparable Harm*

The Court will address the issue of Plaintiff's property interest in his employment, since this issue addresses the second prong of the preliminary injunction standard.

 A property interest is created by "existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). *De La Cruz Andreu v. Inclán*, 671 F.Supp. 109 (D.P.R.1987); *See also, Depto. de Recursos Naturales v. Correa*, 118 D.P.R. 689 (1987) (holding that a public employee had a right in his employment if that right is either protected by law or if the circumstances of his employment have created an expectation of continuity, that employees nominated to a fixed term position will have transitory status, and the duration of the nomination will run throughout the period of the term).

 It is well established, both in Puerto Rico and in federal law, that a person has secured a property right in his employment if he has an expectation of continuity in said employment. *Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92 (1st Cir.1997) (citing *Caro v. Aponte–Roque*, 878 F.2d 1, 4–5 (1st Cir.1989)); *Díaz Martínez v. Policía de Puerto Rico* 134 D.P.R. 144 (1993); *Orta v. Padilla Ayala*, 131 D.P.R. 227 (1992); *Depto. Recursos Naturales, supra;* and *Torres Solano v. P.R.T.C.* 127 D.P.R. 499 (1990). Once an employee has established that he has a property right in his employment, the same is cloaked with Constitutional protection. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

 In this case, it is undisputed that Mr. Quiles had a property interest in his employment. His term is effective until September, 2002. Therefore, he had a clear expectation of continuity in his employment as President of the PSC until said date.

 As part of the preliminary injunction standard, Plaintiff must also establish that, absent the injunction, he will suffer irreparable harm. It is well established that irreparable harm, in the context of an injunction, consists of substantial injury that is not accurately measurable or adequately compensable by money damages. *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8 (1st Cir.2000), *DeNovellis v. Shalala*, 135 F.3d 58 (1st Cir.1998) Mr. Quiles has a property interest in his employment protected by the Constitution. If Defendants deprive Mr. Quiles of this employment, they will deprive him of his salary, which is compensable with money. However, they will also deprive him of his title and dignity, and will subject him to humiliation and public ridicule. These are intangibles not aptly measured or compensable by any monetary amount. The Court therefore holds that Plaintiffs have met the second requirement of the preliminary injunction standard.

### 3. *Balance of Hardship*

 Regarding the third prong, Plaintiff must prove that the balance of hardship weighs in his favor. Defendants would be hard pressed to argue that it weighs in their favor. Their candidate is not in office, is not being deprived of his salary, or of his title; in short, Mr. Hernández does not yet have a property inter-

est in his employment, and thus, cannot be harmed in the same way Plaintiff can by the issuance of this injunction. The Court concludes that balance of hardship weighs heavily in Plaintiff's favor.

### 4. *Protection of the Public Interest*

▮ Regarding the fourth prong, that the public interest will not be harmed by the issuance of the injunction, the Court need only look at the Legislative History of this law and its motives regarding the implementation of the terms for the Commissioners. Continuity and better implementation of public policy was the goal of these limits, and the knowledge that one with more experience will necessarily operate better and more efficiently than one who has less experience. In addition, the fact that the Founding Fathers established the doctrine of separation of powers, more fully discussed below, towards prohibiting exactly this kind of crass intrusion make the argument for erring on the side of Plaintiffs even more compelling. The Court therefore holds Plaintiffs have met the fourth prong of the test for the preliminary injunction. Based on the evidence presented, the Court concludes that Plaintiffs have sustained their burden of establishing the four (4) requisite elements for the issuance of a preliminary injunction.

The Court ends its analysis of this matter with a discussion of the doctrine of separation of powers alluded to above, which it believes was inherent in the Legislature's enactment of this law. The Doctrine of Separation of Powers is as old as the United States itself, as it is one of the pillars of liberty upon which the United States was founded. Indeed, during the Constitutional Convention, and afterwards, during the debates for the ratification of the Constitution, the principle that all branches of government be separate, with certain checks on the others, was an inherent part of the ideas of freedom for the new nation. THE FEDERALIST NOS. 47, 51 (James Madison). However, it was clear to the Founding Fathers that while each department was to operate and manage its own affairs independently, there were inherent checks and balances in order to prevent abuses of power in the other branches. In other words, each branch of the new government was designed so as to not encroach on the powers of the other branches, or to surpass the limits delegated to their own branch.

In order to lay a foundation for that separate and distinct exercise of the different powers of government, which to a certain extent, is admitted on all hands to be essential to the preservation of liberty, it is evident that each department should have a will of its own; and consequently, should be so constituted, that the members of each should have as little agency as possible in the appointment of the members of the others.

... But the great security against gradual concentration of the several powers in the same department, consists in giving to those who administer each department, the necessary constitutional means, and personal motives, to resist encroachments of the others.

THE FEDERALIST NO. 51 at 261, 262 (James Madison) (Buccaneer Books, Inc., 1992).

It is agreed on all sides that the powers properly belonging to one of the departments, ought not to be directly and compleatly administered by either of the other departments. It is equally evident, that neither of them ought to possess directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will nor be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from the passing limits assigned to it. After discriminating therefore, in theory, the

several classes of power, as they may in their nature be legislative, executive or judiciary; the next and most difficult task is to provide some practical security for each against the invasion of the others.

THE FEDERALIST NO. 48 at 250 (James Madison) (Buccaneer Books, Inc., 1992).

It is clear to the Court that this kind of separation of powers is translated into the concept of the government of Puerto Rico and has been modeled after the Constitution of the United States, as is the case with most of the Constitutions of the other Republican governments of the Hemisphere (even if inoperative for a period of time because of their lack of continuous constitutional government). Therefore, these issues of checks and balances are also inherent in the government of Puerto Rico.

The Executive, in this instance, while having the power to appoint Commissioners, was simply not given the *power to remove them,* and cannot, therefore, invade this sphere of government to do so at her will. These were exactly some of the dangers that the Founding Father feared and spoke of in *The Federalist Papers.*

### B. *Qualified Immunity*

■■■■■ In addition, Defendants allege that the Honorable Governor of Puerto Rico Sila Calderón and her Chief of Staff are protected under the doctrine of qualified immunity, given the fact that, if it is true that Mr. Quiles cannot be removed, then their request to remove him was an honest mistake. The doctrine of qualified immunity protects government officials who perform discretionary functions from *suit* and *liability for monetary damages* under 42 U.S.C. § 1983 (emphasis ours). *See Roldán–Plumey v. Cerezo–Suárez,* 115 F.3d 58, 65 (1st Cir.1997). However, after the damages claims have been dismissed,

*see infra,* this is not a case about money damages, it is a case for equitable relief. Hence, said doctrine has no place in this case.

### C. *Punitive damages*

■■■■ Punitive damages are available in a section 1983 action where a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632 (1983). Deterrence of future egregious conduct "is a primary purpose of both section 1983 and of punitive damages." *Id.* at 49, 103 S.Ct. 1625.

■■■ However, in the case at bar, no harm has yet occurred that could merit the imposition of punitive damages. Mr. Quiles has not been deprived of his employment, or of the salary that goes with it. In the absence of such harm, the Court declines Plaintiff's invitation to impose punitive damages. *See Intercity Maintenance Co. v. Local 254, Serv. Employees Intern. Union AFL–CIO,* 241 F.3d 82 (1st Cir.2001) (stating that because plaintiff failed to present evidence from which the jury could have found that Plaintiff suffered actual harm the district court properly refused to admit evidence of punitive damages.) Therefore, the claim for punitive damages is unripe, and is therefore **DISMISSED WITHOUT PREJUDICE.**

### D. *1983 claim of Mr. Quiles' wife*

Mr. Quiles and his wife have also brought forth a cause of action under § 1983. Defendants assert that § 1983 does not provide a cause of action for the relatives of a Plaintiff, at least not in this instance.

While the Complaint is unclear regarding exactly what her claim is, the sweep of § 1983 is so broad (person, citizen of the

United States [7]) that it is rare to find a plaintiff to whom the statute does not apply to. 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3573.1 (2d Ed.1984). It is undisputed that Mrs. Quiles falls into both of the two categories enumerated above.

■ However, Courts have held that § 1983 sometimes does not apply to a spouses' *cause of action*. *Rodríguez v. Comas*, 888 F.2d 899 (1989) (stating that § 1983 does not create a federal cause of action for the emotional distress of a spouse). Therefore, the real issue is whether or not a Plaintiff has standing to assert the particular claim in question. In this case, the question is whether Mrs. Quiles has standing to claim a violation of her civil rights when it is *her husband* who might possibly be removed from his job. The Court finds that she does not, and therefore also **DISMISSES WITH PREJUDICE** Mrs. Quiles' § 1983 claim.

E. *Certified English Language Translations*

The Court ends this discussion with what is perhaps the most critical element of this case—English language translations of the supporting documents. During the hearing held on November 2, 2001, the Court ordered counsel for Plaintiffs to file certified English language translations of the documents he presented in evidence, pursuant to Local Rule 108.1 and 1st Circuit jurisprudence, by Monday, November 5, 2001. As of the date of this writing, the translations have not been filed. All of the 104 documents filed by Plaintiffs in Spanish are the essential facts that must be considered by this Court to intelligently decide this case. The documents are attached to this Order and are labeled Appendix 1.

By virtue of this fact alone, the Court should not allow the injunction to issue. *See Ramos–Báez v. Bossolo–López,* 240 F.3d 92 (1st Cir.2001) (holding that Court of Appeals would not consider Spanish letters for which English translations were not provided on appeal); *González–Morales v. Hernández–Arencibia,* 221 F.3d 45, 50 (1st Cir.2000) (stating that Plaintiff waived arguments on portions of an opinion that they failed to translate for the Court) *Rivera v. Hospital Interamericano de Medicina Avanzada,* 125 F.Supp.2d 11, 14 (D.Puerto Rico 2000) (stating that a deposition filed in Spanish in opposition to a Motion for Summary Judgment would not be considered as part of the record given Plaintiff's failure to provide an English translation as required by the rule) and *United States of America for the Use and Benefit of Elec. Mach. Enter. of Puerto Rico, Inc., v. Fraya, S.E. et.al.,* 145 F.3d 1 (1st Cir.1998).

■ Translations are essential in this instance, since, as this is a time-sensitive case, Defendants have or may have the right to take immediate action before the First Circuit. However, they are impeded from doing so by virtue of the fact that the First Circuit cannot understand the accompanying documents in this case because they are in Spanish. Therefore, the First Circuit will not take into consideration untranslated documents, and so they have held on many occasions.

It is common knowledge that any document filed in this Court in Spanish must be accompanied by a certified English language translation. *See* Local Rule 108.1. Given the fact that none were offered when the documents were filed, the Court then granted Plaintiffs ample time to file said translations, until Monday, November

---

7. See 42 U.S.C. § 1983 (West 2001)

5, and counsel for Plaintiffs simply did not comply with the Court's order.

## VI. CONCLUSION

The Court finds that the statute is clear in its language stating that the Chair of the PSC, an employee appointed to a term position as Chairman cannot be terminated before the end of his term as Chairman, at the will of the Governor, and that such is also the opinion of the Supreme Court of Puerto Rico, the Court finds that Plaintiffs have met their burden of proof and are entitled to a preliminary injunction. However, and although having had ample time to obtain the translations of the documents it presented in evidence not only before the preparation of the Complaint, but also from the time the TRO was issued until the date of the hearing, and hereafter until November 5, Plaintiffs still failed to submit translations.

Therefore, despite Plaintiffs having been given an opportunity at the hearing to submit the translations by Monday, November 5, which they failed to do, and it appearing by the jurisprudence of the Circuit Court that the Circuit will not take into consideration the untranslated documentary evidence and cases; and it further appearing that without consideration of this documentary evidence the Court cannot enter judgment for the Plaintiffs granting the preliminary injunction they requested, the Court hereby **DENIES** Plaintiff's Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**