“[T]he existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions in not to be pronounced unconstitutional unless
 
 ...
 
 it is of such character as to preclude the assumption that it rests on some rational basis.
 
 ”
 
 United States v. Carolene Products, Co.,
 
 304 U.S. 144, 152-53, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).
 

 OPINION & ORDER
 

 GELPI, United States Magistrate Judge.
 

 This is an action for declaratory judgment and injunctive relief brought by the plaintiffs, José E. Rivera-Pagán and his wife, Rosemarie F. Broadwell, (“plaintiffs”) against the defendants, the Municipality of San Juan, and others
 

 [1]
 

 ,
 
 (“Municipality” or “defendants”) pursuant to 42 U.S.C. § 1983
 
 [2]
 
 and 28 U.S.C. § 2201
 
 [3]
 
 . Specifically, the plaintiffs claim that San Juan Public Ordinance No. 11 § 13.11, as applied to their business, violates their constitutional right to the equal protection of the laws, and deprives them of due process under the law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. U.S. Const, amend. V; U.S. Const, amend. XIV. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).
 

 Before this Court are the Municipality’s motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which includes a memorandum of law in opposition to plaintiffs’ motion requesting a preliminary injunction (Docket No. 6), and plaintiffs’ motion for preliminary injunction and declaratory relief, which also includes a memorandum of law in support thereof. (Docket No. 3).
 

 I.
 
 Factual Background
 

 [4]
 

 The plaintiffs, José E. Rivera-Pagán and his wife, Rosemarie F. Broadwell, own
 
 *CLXXVIII
 
 and operate Magnolias Café, (“Magnolias” or “the Café”) a pub located on 1589 Jesús T. Pinero Avenue in Puerto Nuevo, Rio Piedras, Puerto Rico. Magnolias Café is licensed to sell alcoholic beverages and operate coin operated entertainment machines. The establishment has prospered for the past three years because of its loyal customer base and extended business hours. The Café is open between 5:00 p.m. and 6:00 a.m., with its peak hours of operation between 12:30 a.m. and 4:30 a.m. Magnolias clientele often drop by the Café after they have finished their shifts at area restaurants and casinos.
 

 On February 15, 2004, Public Ordinance No. 11 came into effect, which was enacted the previous year by the San Juan Municipal Assembly. Included in Public Ordinance No. 11 is Section 13.11, which prohibits the sale and distribution of alcoholic beverages between midnight and 7:00 a.m. in certain areas of San Juan. Section 13.11 contains a provision that allows affected businesses to apply for a permit to sell alcoholic beverages until 2:00 a.m. on Thursdays, Fridays and Saturdays. The San Juan Municipal Assembly decided to apply Section 13.11 to certain areas of Puerto Nuevo that comprise its commercial corridor because of the large number of businesses and commercial establishments located therein.
 

 Magnolias Café is located on Jesús T. Piñero Avenue, and thus the Café was among the several businesses in Puerto Nuevo affected by the provisions of Section 13.11. The Café applied for and received a permit for alcohol distribution until 2:00 a.m., but plaintiffs were still prohibited from selling alcoholic beverages during the Café’s peak hours of operation. The Café maintained its normal businesses hours for two weeks, but profits dwindled because the plaintiffs could no longer serve alcoholic beverages to the patrons that formed the core of Magnolias’ customer base. The Café’s former customers thus began to frequent other nearby establishments that fell outside Section 13.11’s reach, and the once prosperous Café was forced to now close after 2:00 a.m., losing five (5) of its standard hours of operation. To make matters worse, municipal police often stopped at Magnolias to ensure that plaintiffs were complying with the Code. The frequent police presence has deterred even more customers from visiting Magnolias. The plaintiffs state that they have complied with Section 13.11 since February 15, 2004. Although plaintiffs still operate Magnolias Café, they were forced to lay off two (2) employees, and their business continues to suffer due to a large decrease in profits.
 

 II.
 
 Standards of Review
 

 A.
 
 The Preliminary Injunction Standard
 

 The preliminary injunction standard requires a trial court confronted with a motion for preliminary injunction to consider four (4) elements: 1) the probability of the movant’s success on the merits; 2) the prospect of irreparable harm absent the injunction; 3) the balance of the relevant equities; and 4) the effect of the court’s action on the public interest.
 
 Rosario-Urdaz v. Rivera-Hernandez,
 
 350 F.3d 219, 221 (1st Cir.2003).
 

 B.
 
 The Motion to Dismiss Standard
 

 When ruling on a 12(b)(6) motion, a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiffs’ favor.
 
 Berezin v. Regency Sav. Bank,
 
 234 F.3d 68, 70 (1st Cir.2000). A court should not dismiss a complaint for failure to state a claim or for lack of subject matter jurisdiction unless it is clear that plaintiff will be unable to recover under any viable theory.
 
 *CLXXIX
 

 LaChapelle v. Berkshire Life Ins. Co.,
 
 142 F.3d 507, 508 (1st Cir.1998);
 
 Garita Hotel Ltd. P’ship v. Ponce Fed. Bank,
 
 958 F.2d 15, 17 (1st Cir.1992). The First Circuit has stated that “a complaint must set forth a factual allegation either direct or inferential respecting each element necessary to sustain recovery under some actionable legal theory.”
 
 Berner v. Delahanty,
 
 129 F.3d 20, 25 (1st Cir.1997). “However, a Court will not accept a plaintiffs unsupported conclusions or interpretations of the law” and is free to ignore “periphrastic circumlocutions and the like.”
 
 Aulson v. Blanchard,
 
 83 F.3d 1, 3 (1st Cir.1996).
 

 In examining whether plaintiffs have a substantial likelihood of success on the merits, this Court will simultaneously examine the allegations set forth in defendants’ motion to dismiss, as the arguments contained in the same form the crux or plaintiffs’ case. In addition, the Court notes that the standard plaintiffs must surpass in order to succeed on their preliminary injunction claim, likelihood of success on the merits, is higher than the one they must surpass to defeat defendants’ motion to dismiss.
 
 Quiles Rodriguez v. Calderon,
 
 172 F.Supp.2d 334, 339 (D.P.R.2001).
 

 III.
 
 Applicable Law
 

 A.
 
 Municipality of San Juan Public Ordinance No. 11 § 13.11
 

 Local Ordinance No. 11, § 13.11 states in relevant part:
 

 “[a]ny person who sells and/or dispatches alcoholic beverages from twelve (12:00) midnight until (7:00) in the morning shall incur [ ] a fault and if convicted shall be subject to the payment of an administrative fine of One Thousand Dollars ($1,000.00).
 

 Provided that if the sale and/or dispatch is performed in a commercial establishment, the owner of said establishment may request a certification to the Director of the Department of the Police and Public Security of the Municipality of San Juan, for purposes of the latter determining that said operation does not affect the tranquility and peaceful living of the neighbors in the area, in which case, these establishments may continue with the sales and/or dispatch of alcoholic beverages on Thursdays, Fridays, and Saturdays until two (2:00) in the morning of the next day. Provided, further, that when Monday is a Holiday, they may continue on Sunday with the sales and dispatch of alcoholic beverages until two (2:00) in the morning. In these cases, the prohibition established in paragraph one of this Article shall apply from Two and One minute (2:01) in the morning until Seven (7:00) in the morning. On the rest of these days, the prohibition shall be pursuant to paragraph One of this Article.
 

 The extended schedule shall be allowed in such areas that are essentially of a commercial use.”
 

 B.
 
 Legislative Intent behind Public Ordinance No. 11 § 13.11
 

 The Municipality enacted Public Ordinance No. 11 to “contribute to a better quality of life, fomenting health, security and serenity of the residents, businessmen and visitors, and to keep the physical integrity of the communities and public places.”
 
 See
 
 (Docket No. 6, p. 8 ¶ 15);
 
 see also
 
 testimony of Coronel Adalberto Mercado Cuevas at the preliminary injunction hearing. Prior to formulating Public Ordinance No. 11, the Municipality held public hearings and several meetings in the communities that would be affected by the Code, including Puerto Nuevo. (Docket No. 6, p. 8 ¶ 15).
 
 Id.
 
 During these meetings, members of the community described problems with “the proliferation of alcoholic beverages, unnecessary noises late at
 
 *CLXXX
 
 night, illegal disposals of waste and abandoned vehicles, parking in prohibited areas, especially vehicles obstructing sidewalks, and the operation of commercial businesses without permits.”
 
 Id.
 
 To address these concerns, the Municipal Assembly determined that it was necessary to control, among other activities, the sale and consumption of alcoholic beverages in a large area of Puerto Nuevo.
 
 Id.
 
 The Municipality formulated Section 13.11 to remedy these specific concerns, and in an effort to reduce the overall incidence of violent crime in areas covered by the ordinance.
 
 Id.
 

 IY.
 
 Analysis
 

 A.
 
 Evidentiary Hearings and Plaintiffs’ Likelihood of Success
 

 As one noted commentator explains, “a preliminary injunction is an injunction that is issued to protect plaintiffs from irreparable injury and to preserve the court’s power to render a meaningful decision after a trial on the merits.” 11
 
 Wright & Miller, Federal Practice and Procedure
 
 § 2948 (2d ed.1987). Equitable remedies should be granted with discretion and only when the Court is satisfied that certain requirements are met.
 
 Anheuser-Busch, Inc. v. Teamsters Local No. 633,
 
 511 F.2d 1097, 1098 (1st Cir.1975).
 

 Evidentiary hearings are often desirable at the preliminary injunction stage.
 
 Aoude v. Mobil Oil Corp.,
 
 862 F.2d 890, 894 (1st Cir.1988). If the trial court has before it competing submissions of evidentiary quality or if the answer to the likelihood-of-success inquiry is readily apparent, than respect ordinarily will be afforded to a court’s decision not to convene an evidentiary hearing.
 
 Id.
 
 If there is any doubt by the presider, however, such doubt should be resolved in favor of taking evidence.
 
 Id.
 
 This Court held an evidentiary hearing on the March 19, 2004, and continued the same on March 23, 2004, to provide the parties with an opportunity to present their arguments and allow for a meaningful assessment of plaintiffs’ likelihood of success.
 

 After conducting both hearings, the Court finds the testimony of both Rivera-Pagán and Coronel Adalberto Mercado Cuevas (“Coronel Mercado”) entirely credible. The Court further notes that both their testimonies were not inconsistent. Rivera-Pagan testified regarding the operation of his business and Section 13.11’s effect on Magnolias and Coronel Mercado testified about the enactment and purpose of the ordinance in question.
 

 1.
 
 The Municipality’s police power and the XXI Amendment
 

 The Twenty First Amendment grants almost unfettered discretion to state and local governments in their regulation of the sale and distribution of alcohol.
 
 See California v. LaRue,
 
 409 U.S. 109, 119-20, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (abrogated on other grounds);
 
 Grendel’s Den, Inc. v. Goodwin,
 
 662 F.2d 88, 97 (1st Cir.1981);
 
 Spudich v. Smarr,
 
 931 F.2d 1278, 1280 (8th Cir.1991);
 
 Davidson v. City of Clinton,
 
 826 F.2d 1430, 1432 (5th Cir.1987);
 
 Trs. of Mortgage Tr. of America v. Holland,
 
 554 F.2d 237, 239-40 (5th Cir.1977);
 
 Int’l Food & Beverage Sys. v. City of Fort Lauderdale,
 
 664 F.Supp. 482, 485 (S.D.Fla.1987);
 
 Wal Juice Bar, Inc. v. Elliott,
 
 664 F.Supp. 269, 271 (W.D.Ky.1987). In
 
 Craig v. Boren,
 
 the Supreme Court of the United States expressly acknowledged a state’s broad discretion in this area, and “confer[ed] something more than the normal state authority over public health, welfare, and morals.”
 
 S. & S. Liquor Mart., Inc. v. Pastore,
 
 497 A.2d 729, 732 (R.I.1985) (quoting
 
 LaRue,
 
 409 U.S. at 114, 93 S.Ct. 390);
 
 see also Craig v. Boren,
 
 429 U.S. 190, 206, 97 S.Ct.
 
 *CLXXXI
 
 451, 50 L.Ed.2d 397 (1976). State statutes dealing with the sale and distribution of alcohol are traditionally considered social welfare statutes.
 
 Thurlow v. Massachusetts,
 
 46 U.S. 504, 505, 5 How. 504, 12 L.Ed. 256 (1847). Thus, a state’s heightened authority under the Twenty First Amendment, coupled with police power to regulate for the welfare of its citizens, creates an almost insurmountable burden when challenging the constitutionality of a state or local statute dealing with alcohol regulation. Shelly Ross Saxer,
 
 License to Sell: Constitutional Protection Against State or Local Regulation of Liquor and Liquor Licensing,
 
 22 Hastings Const. L.Q., 441, 480 (1995).
 

 2.
 
 Plaintiffs’ Equal Protection Claim
 

 The Fourteenth Amendment commands that no person shall be denied equal protection of the laws by any state. U.S. Const, art. XIV. The concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.
 
 Reynolds v. Sims,
 
 377 U.S. 533, 535, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The purpose of the clause is to secure every person within the State’s jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution through duly constituted agents.
 
 Village of Willowbrook v. Olech,
 
 528 U.S. 562, 564-65, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). When the governmental action relates only to matters of social or economic welfare, however, the law need only rationally relate to a legitimate governmental purpose.
 
 Kotch v. Brd. of River Port Pilot Comm’rs,
 
 330 U.S. 552, 556-57, 67 S.Ct. 910, 91 L.Ed. 1093 (1947). This is so because a court should not grant any significant review to legislative actions that classify in terms of the general welfare.
 
 Nowak & Rotunda, Constitutional Law
 
 § 14.3 (6th ed.2000). The Supreme Court has held that in this area the courts have no unique function to perform; they have no institutional capacity to assess the scope of legitimate governmental ends in these areas or the reasonableness of classifications that are in any way superior to that of the legislature.
 
 Id; see Kotch,
 
 330 U.S. at 556-57, 67 S.Ct. 910;
 
 Olech,
 
 528 U.S. at 564-65, 120 S.Ct. 1073. Thus, if a statute classifies in terms of the general welfare, the presiding court will only ask whether it is conceivable that the classification bears a rational relationship to a legitimate governmental end.
 
 Olech,
 
 528 U.S. at 564, 120 S.Ct. 1073.
 

 a.
 
 Level of Scrutiny
 

 Plaintiffs argue that the Municipality has unlawfully discriminated against them because the Municipality is treating similar situated businesses differently. In particular, they note that neighboring commercial establishments, located outside the area affected by Public Ordinance 11, and which are almost identical in customer base and services rendered, can legally vend and distribute alcohol after midnight and 2:00 a.m., while others, such as Magnolias Café, cannot. Plaintiffs have neither challenged the Municipality’s stated purpose, nor have they challenged the process by which the statute was enacted. Accordingly, Section 13.11 classifies as social welfare statute, and thus triggers a rational basis standard of review.
 
 Lucas v. S.C. Coastal Council,
 
 505 U.S. 1003, 1005, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).
 

 Under the applicable level of scrutiny, the plaintiffs must show that there is no rational relationship between the prohibition of alcohol sales after midnight and 2:00 a.m., respectively, and the reduction of crime, unnecessary noise, illegal dispos
 
 *CLXXXII
 
 als of waste and abandoned vehicles, and obstructive parking in the area of Puerto Nuevo governed by the Code.
 

 b.
 
 Position of the parties
 

 According to plaintiffs, similar businesses, such as the Chit Chat Café and Spot Bar, which are located only a few minutes away from Magnolias Café by car, continue to serve alcohol after midnight on Sunday and Monday through Wednesday, and after 2:00 a.m. between Thursday and Saturday. Plaintiffs argue that these businesses are only “moments away.” Thus, prohibiting the sale of alcohol at Magnolias Café after midnight and 2:00 a.m., respectively, cannot possibly redress the evils the Code seeks to reduce because the sale and distribution of alcohol continues in businesses adjacent to the area governed by the Code. (Docket Nos. 1 and 3).
 

 Although plaintiffs raise a valid point, “[a] law that affects the activities of some groups differently from the way it affects the activities of other groups is not necessarily banned by the Fourteenth Amendment, otherwise, effective regulation in the public interest would be impossible.”
 
 Kotch,
 
 330 U.S. at 556-57, 67 S.Ct. 910. The Municipality admits that there are drinking establishments near Magnolias Café that are not governed by the Code, and that these businesses indeed offer the same type of services and attract the same type of clientele as Magnolias Café. According to defendants, however, Section 13.11 is uniformly applied to
 
 all
 
 business within the area designated by the Code, and in particular, businesses located on the entire stretch of Jesús T. Pineiro Avenue within the Puerto Nuevo police precinct.
 
 [5]
 
 According to the Police Commissioner’s testimony, the Chit Chat Café and Spot Bar are not within Puerto Nuevo’s commercial corridor. Although the Code treats similar businesses differently, the businesses are not identical in a geographic sense. Thus, the factual difference in their location alone may be enough for Section 13.11 to pass constitutional muster.
 

 This Court cannot invalidate a statute simply because “it may not bring about the result that it claims to produce— reform may take one step at a time, addressing itself to the phase of a problem which seems most acute to the legislative mind.”
 
 Joseph E. Seagram & Sons, Inc. v. Hostetter,
 
 384 U.S. 967, 86 S.Ct. 1583, 16 L.Ed.2d 679 (1966) (abrogated on other grounds). The Municipality’s focus on Puerto Nuevo’s commercial corridor was triggered by the high incidence of crime in the area, as well as the complaints lodged by local residents during the public hearings. According to defendants, the Puerto Nuevo police precinct commonly alternates with only one other precinct for the highest crime rate within the Municipality of San Juan. (Docket No. 6, p. 8 ¶ 15). During the March 19th evidentiary hearing, the Police Commissioner testified that the crime rate for the Puerto Nuevo area had significantly dropped since the implementation of the Code. “Where the law presumably hits the evil where it is most felt, it should not be overthrown as denying equal protection of the laws because there are other instances to which it might have applied.”
 
 Minnesota v. Probate Court of Ramsey County,
 
 309 U.S. 270, 273, 60 S.Ct. 523, 84 L.Ed. 744 (1940).
 

 There is a logical correlation between the sale and distribution of alcoholic beverages during the early morning hours and
 
 *CLXXXIII
 
 the influx of crime, noise, and vehicular infractions in the area where that alcohol is sold.
 
 See Grendel’s Den, Inc.,
 
 662 F.2d at 97. Based on the evidence of record, this Court finds that there is a rational relationship between Section 13.11’s stated purpose, the reduction of crime and unnecessary noise, illegal waste, and obstructive parking, and the prohibition of alcohol sales after midnight and 2:00 a.m. in the Puerto Nuevo area.
 

 3.
 
 Plaintiffs’ Due Process Claim
 

 Plaintiffs’ further claim that Section 13.11 deprives them of due process in violation of the Fifth and Fourteenth Amendments. U.S. Const, amend. V; U.S. Const, amend. XIV, § 1. Specifically, plaintiffs argue that Section 13.11 deprives them of their substantive due process rights because the substance of the law, as opposed to the procedures used to enforce it, limits their ability to sell alcohol without a constitutionally legitimate justification. (Docket No. 1 p. 4 ¶ 2).
 

 Under substantive due process analysis, the state cannot enact legislation that is “arbitrary, capricious or without a rational or reasonable relationship to the public health, safety, morals, or general welfare.”
 
 Euclid v. Ambler Realty Co.,
 
 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Since 1937, however, the Supreme Court has focused on equal protection, rather than substantive due process, in actions challenging economic and social welfare legislation.
 
 See West Coast Hotel Co. v. Parrish,
 
 300 U.S. 379, 381, 57 S.Ct. 578, 81 L.Ed. 703 (1937). Regardless of the constitutional theory facilitated by plaintiffs, the test and standard of review under these two doctrines are the same.
 
 See Carolene Products, Co.,
 
 304 U.S. at 152-53, 58 S.Ct. 778. “[T]he existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions in not be pronounced unconstitutional unless ... it is of such character as to preclude the assumption that it rests on some rational basis.”
 
 Id.
 
 at 152-53, 58 S.Ct. 778. Plaintiffs are still required to show that there is no rational relationship between the prohibition of alcohol sales after midnight and 2:00 a.m., respectively, and the evils Section 13.11 was enacted to abate. They have failed to do so here.
 

 This Court notes that neither plaintiffs’ complaint, nor their motion for injunctive relief alleges a governmental taking, specifically, an inverse condemnation, or that the de facto suspension of the Café’s liquor license after midnight and 2:00 a.m. violates a personal property right under the Fourteenth Amendment. To advance these arguments, however, plaintiffs would have to establish that the only profitable use of the land where them business is located is the sale and distribution of alcohol.
 
 Lucas,
 
 505 U.S. at 1005, 112 S.Ct. 2886. At the March 19th, 2004, evidentiary hearing, Rivera-Pagán testified that Magnolias Café sold food and non-alcoholic beverages, provided coin operated video games and vending machines, and other forms of revenue generating entertainment. In addition, the majority of states have refused to recognize a liquor license as a constitutionally protected property interest.
 
 See
 
 Saxer, 22 Hastings Const. L.Q., at 467 n. 149.
 

 4.
 
 The Court’s Findings With Respect to Plaintiffs’ Motion for Preliminary Injunction.
 

 The plaintiffs’ have failed to demonstrate a likelihood of success on the merits. Although the Court must consider the prospect of irreparable harm, balance the relevant equities, and determine the effect of the court’s action on the public interest, the likelihood-of-success inquiry is the most dispositive inquiry when assess
 
 *CLXXXIV
 
 ing a motion for preliminary injunction.
 
 Aoude,
 
 862 F.2d at 894. This is so because a preliminary injunction is meant to preserve the court’s power to render a meaningful decision after a trial on the merits. If a plaintiff cannot demonstrate a likelihood of success, equitable relief is not available. A court cannot function as a party’s shield to the impending, unfavorable disposition of their case.
 

 The Court recognizes that plaintiffs are law abiding citizens who have complied with the Code since its implementation, as well as all other legal requirements necessary to operate the Café. The Court also acknowledges the adverse affect of Section 13.11 on the Café’s profit margin. Economic loss alone, however, is an insufficient ground for injunctive relief. This Court cannot invalidate Section 13.11 without first concluding that the Code is wholly arbitrary and cannot be justified by any rational, legitimate state interest. As stated previously in this opinion, this Courts lacks the institutional capacity to assess the scope of the Code’s stated social welfare rationale or the reasonableness of its method that is in any way superior to that of the Municipal Assembly. Moreover, granting a preliminary injunction in the present action could have a deleterious effect on the public interest. According to the Police Commissioner’s testimony, the crime rate in Puerto Nuevo has declined since the Code’s implementation.
 

 4.
 
 Plaintiffs’ allegations of harassment
 

 During the evidentiary hearing on March 19th, Rivera-Pagán testified that municipal officers have entered Magnolias on several occasions to intimidate and badger his patrons. The fact that the Municipality or its officers may act in an intimidating manner when implementing the Code does not render the Code unconstitutional. Their actions, however, may constitute civil rights violations that can be addressed pursuant to 42 U.S.C. § 1983 in an action at law or in equity.
 
 See Goya Foods, Inc. v. Unanue,
 
 233 F.3d 38, 40 (1st Cir.2000). The Court is unable to address plaintiffs’ allegations here because their complaint and request for injunctive relief, as well as the evidence of record, is limited solely to the Code’s constitutionality.
 

 For the reasons stated herein, this Court DENIES , plaintiffs’ motion for a preliminary injunction (Docket No. 3).
 

 B.
 
 Consolidation of Hearing With Trial on the Merits
 
 — Federal
 
 Rule 65(a)(2) and Declaratory Judgment under Rule 57
 

 Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, any evidence received upon an application for preliminary injunction which would be admissible upon the trial on the merits becomes part of the record. Pursuant to Rule 57 of the Federal Rules of Civil Procedure, a declaratory judgment is appropriate when it will terminate the controversy giving rise on undisputed or relatively undisputed facts. Such is the dispute here. Plaintiffs filed for declaratory relief in their motion for preliminary injunction. (Docket No. 3). This Court finds that declaratory judgment is an appropriate and effective remedy.
 

 Based on the evidence contained in the record and the reasons stated herein, this Court finds that Section 13.11 passes constitutional muster.
 

 C.
 
 Defendants’Motion to Dismiss
 

 Based on this Court’s declaratory ruling, the plaintiffs have failed to present a viable theory upon which this Court can grant relief.
 
 Berkshire Life Ins. Co.,
 
 142 F.3d at 508. Accordingly, this Court GRANTS the Municipality’s motion to dismiss (Docket No. 6).
 

 
 *CLXXXV
 
 V.
 
 Conclusion
 

 For the reasons stated herein, this Court GRANTS the Municipality’s motion to dismiss (Docket No. 6) and DENIES plaintiffs’ motion for preliminary injunction. (Docket No. 3).
 

 SO ORDERED.
 

 [1]
 

 . Other defendants involved in this action are the Honorable Jorge Santini Padilla, the May- or of San Juan, in his official capacity, and Coronel Adalberto Mercado Cuevas, in his official capacity as the Commissioner of the Municipal Police Department.
 

 [2]
 

 . Title 42 of the United States Code, section 1983 states in relevant part "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, and citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the injured party in an action at law, suit in equity, or other proper proceeding for redress.” 42 U.S.C. § 1983.
 

 [3]
 

 . Title 28 of the United States Code, section 2201 states in relevant part "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.” 28 U.S.C. § 2201.
 

 [4]
 

 . The facts are taken from the complaint as well as the testimony of plaintiff at the preliminary injunction hearings.
 

 [5]
 

 . Coronel Mercado stated at the hearing that in establishing the ordinance's territorial limits, the Municipality also took into consideration its police and economic resources. However, the Municipality does envision enacting similar codes to all other areas of the San Juan in the future.