Walter O. DAYE, etc., et al., Plaintiffs,

v.

TOBACCO WORKERS INTERNATIONAL UNION, etc., et al., Defendants.

Civ. A. No. 1924-64.

United States District Court
District of Columbia.

Nov. 2, 1964.

McKissick & Burt, Durham, N. C., and Glenn Graves, Washington, D. C., for plaintiffs.

James F. Carroll, Washington, D. C., for defendants.

LEONARD P. WALSH, District Judge.

This matter came before the Court on October 9, 1964, for hearing on the motion for a preliminary injunction. Plaintiffs are Local 208 of the Tobacco Workers International Union, and the president of the Local. Defendants are the International and its officers.

By a Temporary Restraining Order issued on August 6, 1964, the defendants were restrained from seizing or taking control of the assets of Local 208 by means of a trusteeship or any other device, until hearing was had on the present motion. The temporary restraining order was extended and modified to permit plaintiffs to pursue and exhaust their intra-union remedies pursuant to the constitution of the International.

Local 208 received its charter as an affiliate of the International in 1937. It was chartered as a segregated local (Negro) with 800 members, all employed in the manufacturing division of Liggett & Myers Tobacco Company, at Durham, North Carolina. At that time there existed at the plant other locals of the same International including: Local 194, also a Negro affiliate, with 2800 members, employed in the "leaf" division of the company; and Local 176, which represented some 1600 Caucasian employees of the company. Other crafts at the plant were represented by different affiliations. Apparently each local conducted its own collective bargaining procedures according to the job classification allotted to it.

Local 176 controlled some twenty job classifications, which were limited to Caucasians, while only five classifications were open to Negroes, these being the menial and generally low paying positions. In addition, the Negroes at the plant were the first to be fired and last to be hired in the event of a lay-off, regardless of seniority.

This situation continued, over the objections of Local 208, with the exception of the up-grading of five Negroes to higher job classifications in 1956; and in 1961 Local 208 filed complaints with the President's Committee on Equal Employment Opportunities, alleging racial discrimination. The International took no action up to the time of the proceedings before the President's Committee.

In 1963 the Liggett & Myers Company was informed by General Services Administration that its practice of bargaining with locals "racially identifiable in structure" was in violation of the Executive Order 10925, Part III, to the effect that employers who practiced racial discrimination among workers would lose their government contracts, and the company was instructed to comply with the Executive Order to ensure that "dual lines of jurisdiction, seniority, progression and/or retreat are nonexistent." In other words, the company must bargain with only one fully integrated and non-discriminatory local or risk losing its government contracts.

Negotiations between Local 208 and Local 176 followed, and the final offer of merger made by Local 176 provided that members of Local 208 who came into Local 176 would be placed behind the employees of Local 176, insofar as

seniority was concerned. This provision was not acceptable to Local 208. In April of 1964, the other Negro group, Local 194, merged with Local 176 on basically the same terms Local 208 had rejected. Local 208 contends that this merger is not valid.

On June 10, 1964, Local 176 negotiated a collective bargaining contract with Liggett & Myers, in which it purported to act for all employees of the plant who were members of the International. The effect of this contract was to place all Negro workers behind the white workers with respect to seniority and other rights. Local 208 continued its objections and took various steps to preserve its autonomy by filing proceedings before the President's Committee, the International office, and finally the National Labor Relations Board.

On July 28, 1964, the International informed Local 208 of its intent to impose a trusteeship since "Local 208 now finds itself in the position of not being able to bargain collectively with the employer of its members; its members are being represented by another union * * *; and it operated a segregated local union." On August 4, 1964, the instant case was filed to preserve the status quo pending the outcome of other proceedings which the Local had instituted with the National Labor Relations Board, wherein it has charged unfair labor practices by Liggett & Myers and by the International.

While this matter was pending on August 18, 1964, the president of the International filed charges against Local 208, and after hearing the president of the International issued a decision suspending the Local, said suspension not to take effect until the Local had exhausted its intra-union remedies and the hearing on the preliminary injunction in this court. This decision was sustained by the General Executive Board and by the Appeals and Grievance Committee of the International, and was accepted at a convention of the Union in September.

Plaintiffs by their amended complaint filed October 8, 1964, ask the court to enjoin the defendants from imposing the trusteeship and seizing books and property belonging to the Local; from actions discriminating against plaintiffs; from attempting to destroy Local 208 by having its charter revoked, or otherwise changing the status of plaintiff union; and from conspiring with the employer to unlawfully breach the agreement for checked-off dues paid by individual members, etc. Plaintiffs also seek special damages for unlawful breach of contract and for unlawfully conspiring to deprive plaintiffs of equal protection under the law by preventing pursuance of its grievances before the President's Committee and the National Labor Relations Board.

Plaintiff Local 208 has consistently contended that any merger of members of Local 208 and Local 194 with Local 176 whereby the Negro members are placed behind the white members for seniority and other purposes is, in effect, segregation by race, and therefore a violation of Executive Order 10925, Part III, and that the validity of such a merger is highly questionable.

In the proceedings before the National Labor Relations Board, Local 208 has filed charges of unfair labor practice against Liggett & Myers and the International claiming that the company has unlawfully refused to bargain with Local 208 and has attempted to coerce that Local into accepting the unfair merger proposal; and that the International, by virtue of its proposal to impose the trusteeship on Local 208, has acted in derogation of employees' rights of self-organization and collective bargaining. Local 208 further alleges that the employer and the International are conspiring to coerce Local 208 to accept the merger arrangement. To date, the National Labor Relations Board has not acted upon these charges.

Local 208 has exhausted its intra-union remedies. The Local contends that while the President's Committee has not yet dealt with the specific problem pre-

sented, the Committee will not approve the present merger arrangement in that it is "racially identifiable in structure"; and the question of whether "segregated seniority" constitutes an unfair labor practice must be determined by the National Labor Relations Board.

The defendants, the International and its officers, take the position that Local 208 has exhausted its union remedies and these proceedings were valid, and the matter of merger was resolved adversely to plaintiffs, with the result that Local 208 can no longer function as a valid bargaining unit, and the proposal for trusteeship is the correct and proper action for the International to take.

Local 208 maintains that this Court has jurisdiction to preserve the autonomy of Local 208 until the ultimate issues have been properly determined; that if a trusteeship is imposed, all records and funds of the Local will be taken and the Local will be unable to seek relief from the National Labor Relations Board and the President's Committee.

■ The Court is of the opinion that it does have this jurisdiction to preserve the intra-union *status quo* pending action by the National Labor Relations Board and/or the President's Committee. 29 U.S.C.A. §§ 411(4), 412. (Labor-Management Reporting and Disclosure Act of 1959). Section 411(4) forbids labor organizations from limiting rights of its members to seek relief from an alleged wrong before courts and administrative agencies, provided the aggrieved union members shall first make a reasonable effort to adjust their differences within the labor organization. Section 412 provides that any person "whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court * * * for such relief (including injunctions) as may be appropriate." The problem of trusteeship is expressly treated in Sec-

tion 462, and Local 208 contends that the proposed trusteeship is not legitimate within the meaning of this section.

The Court finds Local 208 has made very diligent efforts to adjust its differences with Local 176 and with the International; and further that the manner in which the trusteeship would be imposed, that is the attempt to coerce Local 208 into the proposed merger,—comes within the provisions of Section 462. Therefore, the Court concludes that it does have jurisdiction over the subject matter and parties in this case.

■ The question then is whether or not the preliminary injunction should issue. The Court considers that its guidelines are those employed by courts of equity in this jurisdiction. Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601 (1951). The more rigid injunction requirements of 29 U.S.C.A. § 107, relating to jurisdiction of the court to issue an injunction in a labor dispute only under specific conditions, one of which is a finding by the court that actual unlawful actions will be committed unless restrained, do not control in the instant case.

■ In weighing the relative importance of the rights asserted and acts sought to be enjoined, the irreparable nature of injury allegedly flowing from denial of the preliminary relief, and the probability of ultimate success or failure of the action, and by balancing of damage and convenience generally, and further, in consideration of the uniqueness of the relief sought here, the Court concludes the injunction should be granted, and the defendants enjoined from proceeding against the plaintiffs by imposing the trusteeship, revoking the charter of plaintiffs, or depriving the plaintiff Union and its members of any rights to which they are lawfully entitled until such time as the National Labor Relations Board shall take jurisdiction of this matter.