**Madelon J. AGUIRRE et al.,**
**Plaintiffs–Appellants,**

v.

**AUTOMOTIVE TEAMSTERS et al.,**
**Defendants–Appellees.**

No. 79–4435.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1980.

Decided Nov. 19, 1980.

Robin W. Allen, Sacramento, Cal., for plaintiffs–appellants.

Neil Bodine, Brundage, Beeson, Tayer & Kovach, Sacramento, Cal., Dennis F. Moss,

Brundage, Davis, Frommer & Jesinger, Los Angeles, Cal., for defendants–appellees.

Before KILKENNY and POOLE, Circuit Judges, and CALLISTER,* District Judge.

POOLE, Circuit Judge.

This controversy arises out of a vote by union members on whether to ratify a proposed collective bargaining agreement and thereby end a strike against their employers, two cab companies. Appellants, plaintiffs below, are eighty–one members of Automotive Teamsters, Chauffeurs, and Miscellaneous Employees Local Union No. 165 (Local 165). Appellees are Local 165, Local Joint Council of Teamsters No. 38 (the Joint Council), and the International Brotherhood of Teamsters. They appeal from orders granting summary judgment in favor of appellees. We reverse.

On January 8, 1976, the members of Local 165 voted in separate morning and evening sessions on acceptance of the employers' final contract offer. After completion of the evening voting, the tally was announced as 136 in favor of acceptance and 66 opposed. Shortly thereafter, however, at least 124 union members executed (and later filed with the district court) affidavits attesting that they had cast votes *against* ratification. On February 3, 1976, in view of this indication of election irregularity, appellants sued the appellee unions, their cab company employers and numerous individual union officials.

The complaint alleged that by conducting a fraudulent election, appellees deprived appellants of their right to lawful participation in the affairs of their union, violated the fiduciary obligations of unions to union members, as a result of which appellants had become bound to contract terms unacceptable to a majority of the voting members of Local 165. The complaint further alleged that "as a result of acts of defendants" a number of union members had been terminated or suspended or had been harassed and intimidated. The complaint charged appellees with acting "maliciously, odiously, and oppressively" and that pursuit of internal union remedies would be futile. The action was based on provisions of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401–501, and the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141, *et seq.* Jurisdiction was premised on 29 U.S.C. § 412.

The employer defendants were dismissed at an early stage after which the individual and union defendants moved to dismiss and for summary judgment. On July 6, 1978, in a partial decision, the district court denied the motions to dismiss to the extent that they charged infringement of voting rights,[1] which the court denominated as the first cause of action. The court held that the complaint stated a claim under LMRDA, 29 U.S.C. § 411(a)(1) which guarantees to union members "equal rights and privileges" to vote in elections or referendums and to participate in the business of membership meetings. The individual defendants' motions for summary judgment on the first cause of action were denied because:

> Plaintiffs have shown that, at the very least, a material question of fact exists on whether the ballots were tampered with between the morning vote and the counting. Given the number of depositions of union members who swear that they voted against the contract, it is clear, for purposes of these motions for summary judgment, that the ballots cast by the members were altered or replaced with other ballots prior to the voting. Memorandum Decision of July 6, 1979, at 40.

Upon reviewing the evidence, which was replete with contradictions and uncertainty, the court found genuine issues as to material facts, including whether the ballots had

---

* Honorable Marion J. Callister, United States District Judge for the District of Idaho, sitting by designation.

1. The court denominated these allegations as the first cause of action and did not pass on the remaining claims.

been tampered with and who might have had access to the ballot box and time to effect the tampering.

Because of court calendar problems, the case was transferred to another district judge.[2] On March 15, 1979, the successor judge granted the union defendants' motions for summary judgment. *Frederickson v. Automotive Teamsters, Chauffeurs, and Miscellaneous Employees Local Union No. 165*, 467 F.Supp. 452 (E.D.Cal.1979). His rationale was that appellants' LMRA claims need not be considered, despite the allegations that the action arose under LMRA, because the only jurisdictional statute mentioned was 29 U.S.C. § 412, a part of LMRDA. As to the unions' liability for acts of their officers, the court applied the standard of agency contained in the Norris–La Guardia Act, 29 U.S.C. §§ 101–115. Section 106 of that act requires a more substantial showing than does the common law standard of agency. It provides:

> No officer or member of any association or organization, and no association participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States, for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of such acts, or of ratification of such acts after actual knowledge thereof. 29 U.S.C. § 106.

Relying on *Ramsey v. United Mine Workers*, 401 U.S. 302, 91 S.Ct. 658, 28 L.Ed.2d 64 (1971), and *Amazon Cotton Mill v. Textile Workers Union*, 167 F.2d 183 (4th Cir. 1948), the court held the Norris–La Guardia standard of agency applicable to all federal suits involving "labor disputes." It then determined that this stringent standard must be followed unless the statute under which the suit arose provided specifically to the contrary.[3] No precise authority was cited but the court relied on two additional cases. *United Electric Coal Co. v. Rice*, 80

F.2d 1 (7th Cir. 1935), *cert. denied*, 297 U.S. 714, 56 S.Ct. 590, 80 L.Ed. 1000 (1936), and *Texas Millinery Co. v. United Hatters International Union*, 229 F.Supp. 341 (N.D. Tex. 1964), *aff'd*, 362 F.2d 322 (5th Cir. 1966), for the proposition that "labor dispute" as used in § 106 should be liberally construed. Since the union vote in controversy was to decide whether to end a strike, the court reasoned that this suit involved a labor dispute and consequently the § 106 standard applied.

Applying the stringent agency standard of § 106, the court found no genuine issue as to any material fact concerning the liability of the unions. Although they had authorized certain of their officers to conduct the contract vote, the court said they had not thereby authorized ballot tampering. It rejected the contention that by approving and implementing the disputed contract after receiving notice of charges of fraud, the union had in effect ratified the alleged tampering.

We think this was error and conclude that the Norris–La Guardia standard of agency is inappropriate in a suit under LMRDA and that appellants' claims under LMRA should have been considered, hence this reversal.

### STANDARD OF AGENCY UNDER LMRDA

■ The inappropriateness of the stringent Norris–La Guardia agency standard in an LMRDA suit is apparent from a brief consideration of the fundamentally different purposes of the two statutes.

The Norris–La Guardia Act was enacted in 1932 during an era of widespread labor strife. The labor movement had protested numerous court orders granting injunctions against strikes or imposing liability on unions under the conspiracy prohibitions of the Sherman Act for illegal acts committed by their members. With a view toward reducing such judicial involvement, Con-

---

2. The Honorable A. Andrew Hauk, Central District of California, sitting by assignment.

3. The court noted the provision in the Taft–Hartley Act, 29 U.S.C. § 185(e), which makes

clear that the common law standard of agency applies to suits authorized by that Act. 467 F.Supp. at 455.

gress passed the Norris–La Guardia Act as a limitation on the power of courts to intervene in labor disputes. A major purpose of supporters of the Act was to circumscribe narrowly the use of the injunctive power, 29 U.S.C. § 101, and to protect concerted action by union members, 29 U.S.C. §§ 104, 105. *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad*, 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957). In addition, § 106 of the Act relieved unions of liability for acts of their members except upon clear proof of actual union authorization or ratification of such conduct.

The purpose of § 106 was explained by the Supreme Court in the leading case of *United Brotherhood of Carpenters v. United States*, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947), which involved a criminal antitrust prosecution. The Court held that § 106 was intended to relieve both unions and employers from rigid vicarious liability in a conspiracy context and from "imputation of guilt for *lawless* acts done in labor disputes." *Id.*, 330 U.S. at 403, 67 S.Ct. at 779 (emphasis added). See also *Ramsey v. United Mine Workers, supra,* 401 U.S. at 310, 91 S.Ct. at 663 ("Congress discerned a tendency in courts to blame unions for everything occurring during a strike.").

An unequivocal statement of the purpose of § 106 appears in S. Rep. No. 163, 42d Cong., 1st Sess., pp. 19–21. *United Mine Workers v. Gibbs*, 383 U.S. 715, 735 n. 26, 86 S.Ct. 1130, 1143, 16 L.Ed.2d 218 (1966). As that report demonstrates, Congress intended that the rules of common law agency, developed as part of the law of negligence, not be applied in a *criminal* context.

[I]t is high time that, by legislative action, the court should be required to uphold the long established law that guilt is personal and that men can only be held

responsible for the unlawful acts of associates because of participation in, authorization or ratification of such acts. As a rule of evidence, clear proof should be required, so that criminal guilt and criminal responsibility should not be imputed but proven beyond reasonable doubt in order to impose liability. S. Rep. 163, *supra,* at 20.

Thus, the obvious aim of § 106 was to insulate unions from imputed liability for actions that were "illegal" in the sense that they violated nonlabor statutes.[4] Where a union is charged with acts which violate a criminal or quasi–criminal statute, imposition of this stringent agency test would frustrate Congressional intent that liability be imposed only upon a strong evidentiary showing that the union specifically authorized or ratified illegality.

As the union movement grew in strength and influence, Congress encountered increasing concern because of abusive practices of unions in the use of their Norris–La Guardia immunity to institute boycotts. In 1947 Congress passed the LMRA, also known as the Taft–Hartley Act, 29 U.S.C. §§ 141 *et seq.*, which established criteria for unfair labor practices which included unions as well as employers. *National Woodwork Manufacturers Association v. N.L.R.B.*, 386 U.S. 612, 623, 87 S.Ct. 1250, 1257, 18 L.Ed.2d 357 (1967). In fixing union accountability for unfair labor practices, the Act provided for unions to sue or be sued as entities and be bound by the acts of their agents.[5] 29 U.S.C. § 185(b).

Section 185(e) makes it clear that the Norris–La Guardia agency standard is not to be applied. Long before enactment of Taft–Hartley, the Supreme Court held that the standard of agency for unions was to be the same as that for corporations. *United*

4. Cases applying the § 106 standard of agency have involved alleged violations of antitrust laws. *Brotherhood of Carpenters v. U. S., supra* (criminal); *Ramsey v. United Mine Workers, supra* (civil); state tort laws, *United Mine Workers v. Gibbs, supra* ; or the Hobbs Act, *United States v. Kemble*, 198 F.2d 889 (3d Cir.) *cert. denied*, 344 U.S. 893, 73 S.Ct. 211, 97 L.Ed. 690 (1952).

5. Section 185 provided a basis for extension of regulation to intra–union affairs through the judicially created duty of fair representation, whereby unions are obligated fully to represent the interests of their individual members. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

*Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 395, 42 S.Ct. 570, 577, 66 L.Ed. 975 (1922). By enacting § 185(e), Congress was merely reaffirming application of common law doctrines of agency to labor law. *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979); *N.L.R.B. v. International Longshoremen's Union Local 10*, 283 F.2d 558 (9th Cir. 1960).

In 1959, renewed concern over claims of undemocratic union organizational practices prompted Congress to pass LMRDA which enacted a code of fairness to assure democratic conduct of union affairs by provisions guaranteeing free speech and assembly, equal rights to vote in elections, to attend meetings, and to participate in the deliberations and voting upon the business conducted at meetings. *N.L.R.B. v. Allis–Chalmers Mfg. Co.*, 388 U.S. 175, 181, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123 (1967). Like the judicially created duty of fair representation implied under LMRA,[6] LMRDA was intended to protect union members in their relations with the union. *Id.*

The policy underlying LMRDA differs radically from that of the Norris–La Guardia Act. Norris–La Guardia was intended to *insulate* unions from attacks by third parties and from overreaching by courts in suits involving violations of nonlabor statutes. LMRDA, in contrast, *subjects* unions to liability for practices violative of individual members' rights. Use of a standard of agency more restrictive than common law to impose such liability would be directly counter to the ameliorative purpose of LMRDA. Moreover, because they involve unions' obligations to union members, suits under LMRDA closely resemble those for breach of the duty of fair representation. Pursuant to section 185(e), common law agency applies to LMRA cases, and no reason is apparent why a different standard should be used under LMRDA.[7] See *Shim-*

*man v. Frank*, 625 F.2d 80, 95 n. 26 (6th Cir. 1980).

Generally speaking, Norris–La Guardia Act provisions have no place in suits implicating internal union affairs. Courts have specifically held that the anti–injunction provisions of Norris–La Guardia are inapplicable to intra–union disputes. E. g., *Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 919 (4th Cir.) *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *Daye v. Tobacco Workers International Union*, 234 F.Supp. 815, 818 (D.D.C.1964). Injunctions have frequently been issued in LMRDA suits; courts in such cases have obviously not applied the Norris–La Guardia Act, although they have not explicitly rejected it. E. g., *Kupau v. Yamamoto*, 622 F.2d 449 (9th Cir. 1980); *Beckman v. Local No. 46, International Association of Iron Workers*, 314 F.2d 848 (7th Cir. 1963); *Stettner v. International Printing Pressman and Assistants Union*, 278 F.Supp. 675 (E.D.Tenn.1976).

In a similar fashion, liability has often been imposed on unions in LMRDA suits without mention of the standard of agency.[8] Since a union, like a corporation, normally acts only through agents, imposition of liability implicitly requires application of ordinary rules of agency. In fact, the only agency issue usually present in LMRDA suits has been whether liability should be *limited* to the union itself or extended to individual union officers. In most instances liability has been imposed on the union and on its agents if they acted abusively with reference to their union duties. E. g., *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1246 (2d Cir. 1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Keene v. International Union of Operating Engineers, Local 624*, 569 F.2d 1375, 1381 (9th Cir. 1978); *Morrissey v. National Maritime Union*, 544 F.2d 19, 24 (2d Cir. 1976). These

---

6. See note 5, *supra.*

7. Indeed, the same conduct may be the basis for causes of action under both statutes. See text at note 10, *infra.*

8. See cases cited in this and the preceding paragraph.

cases are inconsistent with any standard of agency other than that of the common law.

A thorough search has revealed only one case mentioning § 106 in a suit under LMRDA. In *Shimman v. Frank, supra*, the Sixth Circuit held that a union was liable under general agency principles for the beating of a union member in violation of his § 411 rights. The court rejected application of § 106 in a footnote:

> This stiffer standard for union liability in a strike situation is discussed in *U.M.W. v. Gibbs*, 383 U.S. 715, 735–42, [86 S.Ct. 1130, 1143–47, 16 L.Ed.2d 218] (1966). [Citations omitted.]
> In § 301(e) of the Taft–Hartley Act, 29 U.S.C. § 185(e), Congress chose to have ordinary agency rules apply when dealing with an alleged breach of collective bargaining agreement. In the Landrum–Griffin Act [LMRDA], Congress did not state which standard should apply. We think it reasonable to apply ordinary agency principles. We see no indication in the Landrum–Griffin Act that Congress meant to impose any higher standard of proof. *Id.*, 625 F.2d at 95, n. 26.

■ In the face of the policy of LMRDA and the imposition of liability on unions in other cases, the district court's analysis and authorities are unpersuasive. *Ramsey v. United Mine Workers, supra*, applied the § 106 standard of agency in a situation to which Congress had expressly intended the Norris–La Guardia Act to apply, i. e., a suit under the Sherman Act. The other case relied upon by the district court for across-the-board application of § 106, *Amazon Cotton Mill v. Textile Workers Union, supra*, is also inapposite. It involved the impropriety of an injunction in a matter over which the NLRB has exclusive jurisdiction, and failed even to discuss the agency issue.

The district court's conclusion that the instant facts involve a labor dispute is likewise inaccurate. It cited two decisions for the proposition that "labor dispute" as used in § 106 should be construed broadly. Each purported authority involves distinguishable factual settings which the Norris–La Guardia Act was intended to cover, and

neither mentions § 106 or rules of agency. In *United Electrical Coal Co. v. Rice, supra*, an employer sued union members for damages resulting from violence. The court found the anti-injunction provision of Norris–La Guardia *not* applicable because the underlying dispute was between two unions, rather than between employer and employee. The other case, *Texas Millinery Co. v. United Millinery Union, supra*, was a Sherman Act suit in which the construction of the term "labor dispute" was necessary to determine the applicability of the labor exemption from antitrust liability. These cases support neither broad construction of "labor dispute" for § 106 purposes nor expansion of its application beyond actions involving criminal or quasi–criminal statutes.

Moreover, the problem here "arises in the context of a labor dispute," 467 F.Supp. at 455, only in the attenuated sense that the vote determined whether a strike should terminate. It does not "involve" a labor dispute between employer and employee but rather the unions' conduct of their internal affairs and union members' right of participation. We conclude that the district court's incorporation of the § 106 standard of agency into this LMRDA suit was error.

Appellants have stated a claim under § 411(a)(1) for vote fraud violating their right to an equal vote on a referendum. *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961 (6th Cir. 1976). Ballot-stuffing denies union members "the right to vote as surely as if the doors of the union hall had been barred against them while the balloting was conducted inside the hall." *Beckman v. Local No. 46, supra*, 314 F.2d at 850. See also *Pignotti v. Local # 3, Sheet Metal Workers Int'l. Ass'n.*, 343 F.Supp. 236, 243 (D.Neb.1972), *aff'd*, 477 F.2d 825 (8th Cir. 1973), *cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973). The allegations of discrimination in vote counting and dilution of the right of equal participation have then satisfied the standard for a § 411 cause of action under *Calhoon v.*

*Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).[9]

█ As the court had earlier concluded, genuine issues of material fact exist with regard to ballot tampering. Under the common law standard of agency, the unions may well be liable for tampering through the actions of an agent acting within the general scope of his authority, or through ratification by approval of the disputed contract with knowledge of the possibility of vote fraud. Factual disputes exist as to the identity of the guilty party or parties, the actual or apparent authority of union officials and their awareness of voting impropriety when the contract was reviewed. The grant of summary judgment was therefore improper and requires reversal.

### CLAIMS UNDER LMRA

█ The district court's refusal to consider claims under LMRA because the complaint listed only the jurisdictional provision of LMRDA was also erroneous. The rule in this circuit is clear: "If facts giving the court jurisdiction are set forth in the complaint, the provision conferring jurisdiction need not be specifically pleaded." *Williams v. United States,* 405 F.2d 951, 954 (9th Cir. 1969). Accord, *Bowers v. Campbell,* 505 F.2d 1155, 1157 n. 2 (9th Cir. 1974). Appellants appear to have stated a sufficient claim under § 185 for breach of the duty of fair representation since they have alleged denial of rights, bad faith and retaliation. See *Amalgamated Association of Street Electric Railway Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). Conduct may violate both the bill of rights in § 411 and the duty of fair representation implied in § 185. *Roach v. Teamsters Local Union No. 688,* 85

Lab.Cas. ¶ 11,219 (8th Cir. 1979); *Trail v. Teamsters, supra.*[10]

On remand claims under both LMRA and LMRDA should be considered.

REVERSED.

---

**9.** See *Bunz v. Moving Picture Machine Operators Local 224,* 567 F.2d 1117 (D.C.Cir. 1977); *Stelling v. IBEW Local 1547,* 587 F.2d 1379 (9th Cir. 1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979). Since the instant case does not involve election of union officers, the issues raised in *Kupau v. Yamamoto, supra,* are not implicated.

**10.** Exhaustion of remedies under both claims may be excused if pursuit of remedies would be

futile. *Ornellas v. Oakley,* 618 F.2d 1351, 1354 (9th Cir. 1980) (LMRDA); *Williams v. Pacific Maritime Association,* 617 F.2d 1321, 1328–29 n. 13 (9th Cir. 1980) (duty of fair representation). Judge MacBride made a factual finding on April 20, 1976 that a requirement of exhaustion would be improper under the circumstances. Exhaustion was thereby removed as an issue.