**Valda T. JOHNSON, et al., Plaintiffs,**

v.

**David HOLWAY, et al., Defendants.**

**No. CIV.A. 03–2513 ESH.**

United States District Court, District of Columbia.

July 2, 2004.

Valda T. Johnson, Woodbridge, VA, pro se.

Stuart E. Bernsen, Rockville, MD, pro se.

Elizabeth A. Baker, Chevy Chase, MD, pro se.

Philip A. Hostak, Bredhoff & Kaiser, P.L.L.C., Steven K. Hoffman, James & Hoffman, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

This matter is again before the Court on a second motion for temporary restraining order ("TRO"), in which plaintiff seeks to invalidate an emergency trusteeship imposed by the national union. Plaintiff Bernsen alleges that the trusteeship is being maintained in bad faith and should be enjoined through a TRO or preliminary injunction. Having fully considered the pleadings filed by both parties, the Court will deny plaintiff's motion.

## BACKGROUND

Plaintiffs were officers at Local R3–77 ("the local"), a local chapter of the National Association of Government Employees ("NAGE"). David Holway is NAGE's national president. In September 2003, after determining that there was a need to assist the local with its internal functions, Mr. Holway appointed a monitor. The monitor investigated and reported internal problems at the local including, *inter alia*, the local's failure (1) to meet its duty of fair representation; (2) to meet its financial obligation to NAGE; and (3) to preserve and protect the union's assets. (Defs.' Opp. Ex. 1 at 1.) Accordingly, on November 24, 2003, Mr. Holway imposed an emergency trusteeship, appointing Stephanie Zaiser as trustee, directing her to take charge and control of the local, and suspending the local's constitution and by-laws for the period of the trusteeship. (*Id.* at 2.)

On December 9, 2003, plaintiffs moved for a TRO, seeking to enjoin the imposition of the trusteeship. At a December 16, 2003 hearing, the Court issued an oral ruling denying plaintiffs' motion on the grounds that plaintiffs had failed to meet their burden to show that the imposition of the trusteeship was in contravention of NAGE's constitution, or done in bad faith or for improper purposes.

On June 14, 2004, plaintiff Bernsen again filed for a temporary restraining order or preliminary injunctive relief. He alleges that the trustee is acting improperly in attempting to resolve a long-pending arbitration proceeding concerning the Equal Employment Opportunity ("EEO") structure at plaintiffs' employer—the Pension Benefit Guarantee Corporation ("PBGC"). In particular, plaintiff alleges that by transmitting PBGC's proposed settlement agreement to members, defendants have maintained the trusteeship in bad faith. (Pl.'s Reply at 2.) He seeks a partial lifting of the trusteeship as it applies to the arbitration proceedings, to have himself and the other officers reinstated, and to prohibit NAGE and the trustee from taking any action to dismiss the arbitration proceeding.[1]

1. Because the record before the Court is sufficient to determine the likelihood of the success of plaintiff's claim on the merits, the Court will deny plaintiff's request for an evi-

## ANALYSIS

### I. TRO Standard

 For a court to grant a TRO or preliminary injunction, plaintiff must show: (1) a strong likelihood of success on the merits; (2) that without injunctive relief he will suffer irreparable harm; (3) that injunctive relief will not substantially harm other interested parties; and (4) that the public interest favors the injunction. *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 318 (D.C.Cir.1987); *Fed'n Internationale De Football Ass'n v. Nike*, 285 F.Supp.2d 64, 68 (D.D.C.2003). This is an extraordinary form of relief that should not be granted absent a clear and convincing showing by the moving party. *Kahane v. Sec'y of State*, 700 F.Supp. 1162, 1165 (D.D.C.1988).

This standard has been refined in the context of a trusteeship imposed by a parent labor organization upon a local union, because the labor statute requires a heightened burden of proof for challenges to a trusteeship. Under 29 U.S.C. § 464(c), there is a presumption of validity for a trusteeship so long as it is imposed in accordance with the union's constitution

and bylaws and is authorized or ratified by a fair hearing.[2] The presumption lasts eighteen months, and during this time, the trusteeship is subject to attack only upon clear and convincing proof that it was not established or maintained in good faith or for an allowable purpose.

 The Second Circuit articulated the method for applying this presumption in the TRO context, noting that the first inquiry is whether plaintiff has shown that it is likely that the trusteeship was established improperly under NAGE's constitution. *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 789–90 (2d Cir.1994); *Mason Tenders Dist. Council of Greater N.Y. v. Laborers' Int'l Union of N. Am.*, 884 F.Supp. 823, 832 (S.D.N.Y.1995). If plaintiff meets this burden, he must also show by a *preponderance of the evidence* that defendants imposed or maintained the trusteeship in bad faith or for an unauthorized purpose. *Mason Tenders*, 884 F.Supp. at 832. If he does not meet this burden, the trusteeship is presumptively valid, and the plaintiff must then show bad faith or improper purpose by *clear and convincing evidence*. *Id.; Chieco v. Int'l*

---

dentiary hearing. *Broadwell v. San Juan*, 312 F.Supp.2d 132, 138 (D.P.R.2004) ("if the answer to the likelihood-of-success inquiry is readily apparent, then respect ordinarily will be afforded to a court's decision not to convene an evidentiary hearing"); *Big Time Worldwide Concert & Sport Club at Town Center, LLC v. Marriott Int'l, Inc.*, 236 F.Supp.2d 791, 794 (E.D.Mich.2003) ("preliminary injunctions may be denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless") (internal citation and quotation marks omitted). *See also* LCvR 65.1 ("On request of the moving party together with a statement of the facts which make expedition essential, a hearing on an application for preliminary injunction shall be set by the court no later than 20 days after its filing, *unless* the court earlier

decides the motion on the papers ...") (emphasis added).

2. 24 U.S.C. § 464(c) provides that:

[i]n any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws *shall be presumed valid for a period of eighteen months* from the date of its establishment and shall not be subject to attack during such period *except upon clear and convincing proof* that the trusteeship was not established *or maintained* in good faith for a purpose allowable under section 462 of this title (emphasis added).

*Bhd. of Teamsters,* 131 F.3d 130, 1997 WL 753311, at *1 (2d Cir.1997).

Accordingly, the Court may not intervene in a properly imposed trusteeship during this eighteen-month period unless the plaintiff can show by clear and convincing evidence that it is being maintained in bad faith or for an improper purpose. It is to this determination that the Court now turns.

### A. Likelihood of Success on the Merits

In its December 16, 2003 ruling, this Court found that plaintiffs failed to show that the trusteeship, which was imposed on November 24, 2003, was not established in accordance with NAGE's constitution, and thus, that it was subject to the presumption of validity. Plaintiff has offered no new evidence in this proceeding that would alter this result.[3] Accordingly, the trusteeship is presumptively valid, and plaintiff must show bad faith or an improper purpose by clear and convincing evidence.

■ Plaintiff has not done so. First, the gravamen of plaintiff's claim relates to an e-mail from the trustee to all bargaining unit members. (*See* Pl.'s Mot. Ex. 6 [E-mail of June 1, 2004 from Trustee Stephanie Zaiser to all Bargaining Unit Employees ("Zaiser E-mail") ].) The e-mail addressed a pending arbitration proceeding that had been initiated by the local to challenge the adequacy of PBGC's EEO process. At that arbitration, the arbitrator ruled on June 1, 2001, that the PBGC's EEO procedures were not in compliance with EEOC regulations and ordered the PBGC to draft a plan to restructure its process. (Pl.'s Mot. Ex. 2 at 36–38.) In short, the problems related to conflicts of interest and interference in the agency's EEO process by those who represented the agency in personnel matters. After the arbitrator's decision, the EEOC opined that certain aspects of PBGC's process were problematic (Pl.'s Mot. Ex. 3 at 2–3), and the arbitrator held additional hearings in April 2002 regarding that process. (Bernsen Decl. ¶ 21.) However, as of June 28, 2004, the arbitrator had not issued a final decision. On June 1, 2004, Trustee Zaiser distributed to the membership a possible settlement agreement proposed by PBGC. Her e-mail summarized the arbitration proceedings and transmitted a copy of the proposed agreement. (*See* Zaiser E-mail.)

Plaintiff argues that this e-mail demonstrates an intent to "drop an extremely important arbitration case against [PBGC]," and that "Trustee Zaiser has also announced her intention to agree with PBGC that PBGC may deprive employees of their civil rights and may harass and retaliate against employees who seek to initiate the EEO process and file EEO complaints inside the agency." (Pl.'s Mot.

---

**3.** To this end, Mr. Bernsen seems to dispute defendants' compliance with the hearing requirements imposed by NAGE's constitution. NAGE Const. art. XII, § 3(B)(iii) requires the president to give notice within 10 days, to hold a hearing within 30 days of imposing the emergency trusteeship, and to issue a decision as to the trusteeship's validity within 60 days following the conclusion of the hearing. Plaintiff indicates that "[a] hearing date is set for July 1, 2004" (Bernsen Decl. ¶ 5), and that "[t]he time for completing the internal hearing has run well past the timeframe allowed under the NAGE Constitution and Bylaws and under law. A final internal decision may not occur until August 2004" (Pl.'s Mot. at 2 n. 1). However, plaintiff does not dispute that there was a hearing in December, and he acknowledges that "NAGE has been conducting sporadic internal union hearings to consider whether the trusteeship was properly imposed." (*Id.*) Thus, these allegations do not establish that the trusteeship is being conducted in contravention of NAGE's constitution.

at 2–3.) Based on this characterization of the e-mail, plaintiff proceeds to accuse defendants of maintaining the trusteeship in bad faith by "sabotaging a very important arbitration," and by "preclud[ing] or prevent[ing] the arbitrator from issuing a decision, thereby depriving employees of any remedies, and assisting PBGC in violating employees' civil rights." (*Id.* at 4; *see also id.* at 19–20.)

These allegations cannot be supported by reference to the e-mail. In it the trustee writes:

> The Agency has submitted a proposed settlement agreement, which I have included here as an attachment. I believe that the Agency's proposed agreement *with some modification* does provide a *possibility* for settlement of this very stale case. However, I request that bargaining unit members review the proposed agreement and forward comments to me at this email address.
>
> Please submit your comments to me *no later than Wednesday, June 9, 2004.*

(Zaiser E-mail (emphasis added).) Rather than indicating an intent to drop the arbitration or to prevent the arbitrator from issuing a decision, a fair reading of this e-mail indicates that the trustee is merely transmitting the proposed agreement to the bargaining unit members and requesting their input. The trustee's e-mail indicates not a specific intent to enter into the agreement, but rather an opinion that "with some modification," the agreement provided a "possibility for settlement" of the long-pending dispute.[4] (*Id.*) Further,

the Court would only be speculating as to whether the arbitrator would choose to accept any such settlement between the parties.

Moreover, having read the agreement, the Court does not agree with plaintiff's characterization of it. Plaintiff claims that the agreement "completely allows PBGC to retain an adversarial, hostile and retaliatory EEO structure" by "permit[ting] high level managers who are responsible for day-to-day operations and who make or oversee personnel actions that may be the subject of EEO claims, to also serve in the role of 'neutral' EEO officials." (Pl.'s Reply at 10.) He also claims that the agreement "unlawfully places the EEO structure within the Office of General Counsel, which is the office that litigates EEO complaints." (*Id.*) A reading of the proposed agreement, however, is not consistent with this portrayal. The document proposes locating the EEO function under the control of the Chief Operating Officer, who does not perform human resources, labor relations, or EEO advocacy functions. (Pl.'s Mot. Ex. 6 [Proposed Agreement].) The agreement also ensures that the Chief Operating Officer would "receive[ ] advice from the General Counsel and 'neutral' attorneys who do not also represent PBGC as advocates" in labor-management relations, EEO, or human resources cases and grievances. (*Id.*) Thus, it appears that the proposed agreement attempts to eliminate conflicts of interest, and it does not operate to "deprive employees of their civil rights."[5] (Pl.'s Reply at 10.)

---

4. Nor does the trustee's failure to "inform or educate union members or employees of the reasons why the PBGC's EEO system is unlawful" demonstrate bad faith. (Pl.'s Reply at 3.)

5. As plaintiff notes, federal regulations require federal agencies to maintain an equal opportunity program "to identify and elimi-

nate discriminatory practices and policies," and to that end, an agency must provide sufficient resources to administer the program and provide for the "fair and impartial processing of complaints." 29 C.F.R. § 1614.102(a)(1)-(2). It is unclear, though, how plaintiff's citation of these requirements, which are imposed on federal agencies, supports his claim that the union has violated

■ In another attempt to establish bad faith, plaintiff cites defendants' "failure and refusal to represent employees in EEO matters" and their "active[ ] interfer[ence] with cases ... to harm EEO complainants." (Bernsen Second Decl. ¶ 31.) The Second Circuit has defined "bad faith," in this context, as acting "contrary to the union's best interests," in the trustee's own self-interest, in a manner "so outrageous or unconscionable that even if [it was] in the best interests of the union, [it] would constitute bad faith," or in a manner prompted by "some interested or sinister motive." *Local 810*, 19 F.3d at 794.

Plaintiff contends that NAGE has refused to represent at least nine PBGC employees in cases involving EEO matters. (Bernsen Second Decl. ¶¶ 23–24) (alleging a "policy and practice of discriminating against minority and disabled PBGC employees.") Although plaintiff cites these as acts of "sabotage," the Court does not agree that they support a finding of bad faith.[6] Plaintiff has provided no evidence that defendants were required to represent members in disputes with PBGC, and the Court will not second-guess a decision by the union to refrain from using the union's resources to support or continue to support a member's case.[7] Moreover, plaintiff acknowledges that only some of these refusals occurred during the trusteeship (*see* Bernsen Second Decl. ¶¶ 27–30), and as a result, there is no basis for citing actions taken before the imposition of the trusteeship in order to show that the trusteeship is being maintained in bad faith. Additionally, declarant Rhonda Baird contends that, in discontinuing NAGE's support for Ms. Baird's pending arbitration, the trustee failed to discuss her case with her and violated her privacy rights by publicly discussing her case without her consent. (Baird Decl. ¶ 11.) Although this activity may have been ill-advised, it does not rise to the level of bad faith.

In sum, the Court cannot credit plaintiff's unsupported inference that defendants are maintaining the trusteeship to "suppress EEO activity by the local." (Pl.'s Reply at 11.) Therefore, it cannot conclude that plaintiff has shown a likelihood of success on the merits regarding his claim that defendants are maintaining the trusteeship in bad faith.[8]

union members' civil rights. (*See* Pl.'s Reply at 9.)

6. The declarations of individuals who describe problems with PBGC's EEO process simply do not support a claim that the trusteeship is being maintained in bad faith, since the evidence does not support an inference that these problems are attributable to the trusteeship. (*See* Pl.'s Reply Exs. 3–5 [Declarations of Ruby Taylor, Robert Perry, and Dwayne Jeffers].)

7. Nor can the Court infer that that the trustee had acted to "thwart the arbitration" on the basis that the arbitrator told Mr. Bernsen that she would issue her decision by June 18, 2004, but had not done so by June 28, 2004, and in the meantime, the trustee had spoken to the arbitrator. (*See* Pl.'s Reply at 3, 7.) To infer bad faith from these facts, as well as to impugn the integrity of the arbitrator, would be mere speculation.

8. Cases cited by plaintiff do not dictate a contrary result. For example, *Daye v. Tobacco Workers Int'l Union*, 234 F.Supp. 815, 817–18 (D.D.C.1964), an international union was enjoined from, *inter alia*, imposing a trusteeship—through which it sought the local's acquiescence in a contract that discriminated against members based on race—until the National Labor Relations Board acted on charges challenging the legality of the international's actions. In contrast, here, the Court is not faced with deciding whether a proposed trusteeship should be enjoined pending action by another body.

In *Hotel & Restaurant Employees and Bartenders International Union v. Rollison*, 615 F.2d 788, 792–93 (9th Cir.1980), the local

## B. Other Factors

Plaintiff alleges that there would be no harm to others if a TRO were to be issued; indeed, he claims that a TRO would benefit defendants by "help[ing] restore overall confidence in the union." (Pl.'s Mot. at 22). This argument is not convincing, as it is unclear how a partial reversal of this Court's trusteeship decision would restore confidence in the union.

■ Plaintiff also contends that irreparable harm would result without a TRO because "[b]y dismissing the arbitration at the point where all hearings and briefings have been completed, and where the arbitrator is on the verge of issuing a decision to award remedies and damages, the bargaining unit and injured employees will never be made whole." (*Id.* at 21.) And, plaintiff claims, "by agreeing to an unlawful EEO system," defendants are "irreparably denying employees a basic civil right" and "knowingly acquiesc[ing] in employer discrimination." (*Id.* at 21–22; Pl.'s Reply at 2, 10.) It is beyond dispute that, as plaintiff notes, a union may not discriminate against an individual on the basis of his or her race, color, religion, sex, or national origin, or "cause or attempt to cause an employer to discriminate against an individual." 42 U.S.C. § 2000e–2(c)(1), (c)(3); *see also Macklin v. Spector Freight*

*Sys., Inc.*, 478 F.2d 979, 989 (D.C.Cir.1973) ("in negotiating as well as in administering a contract a union is obliged to protect all those it represents and may not consent to provisions or take positions that discriminate on racial grounds against some of its people"). However, there is no basis to infer that the trustee's e-mail—which suggests that the union members review the proposed settlement—will cause union members to be discriminated against. Nor is there any basis for believing that the arbitrator will accept a settlement that is contrary. to the best interests of the union members. The harm alleged by plaintiff is thus too remote and speculative to warrant injunctive relief. *Nat'l Conference on Ministry to Armed Forces v. James*, 278 F.Supp.2d 37, 52 (D.D.C.2003) (speculative allegations of irreparable harm and benefits to the public interest did not support TRO); *Cerberonics, Inc. v. Garrett*, No. 91cv0239, 1991 WL 45738, at *4 (D.D.C. Mar. 20, 1991) (injury too speculative to warrant injunctive relief).[9]

■ Likewise, plaintiff alleges that "the public benefits when a TRO would require a union to abide by the nation's civil rights laws and refrain from aiding and abetting an employer in violating those laws." (*Id.* at 22.) This argument is unpersuasive since the harm from which the public is

union resisted the international's attempt to impose a trusteeship, and the district court granted a partial trusteeship. The Court's order suspended the Local's collective bargaining authority and granted the international complete custody and control over all the books and records, while allowing the Local's elected officers to continue running the day-to-day affairs. *Id.* at 793. Later, after a hearing on the the international's motion for summary judgment, the district court modified the order to return collective bargaining authority to the local and, in refusing to grant the international's request for a stay pending appeal, "reasoned that the Local had raised serious questions as to the good faith imposition of the trusteeship." *Id.* at 792. In con-

trast, plaintiff has not raised serious questions as to defendants' good faith imposition of the trusteeship, and the unique solution crafted by the court in *Rollison* is not warranted here.

9. Citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), plaintiff claims that "[a] denial of civil rights constitutes irreparable harm." (Pl.'s Reply at 10.) However, the harm there was not merely speculative as class members' "First Amendment interests were either threatened or in fact being impaired at the time relief was sought." *Id.*

allegedly protected is only speculative. *Nat'l Conference,* 278 F.Supp.2d at 52. Moreover, in enacting the LMRDA, Congress sought to foster internal union self-government, and included a presumption of validity for trusteeships as a means for encouraging union self-regulation. *Becker v. Indus. Union of Marine Shipbuilding Workers of Am., AFL–CIO,* 900 F.2d 761, 771 (4th Cir.1990). By law, the Court is constrained not to thrust itself into the internal affairs of the union, including an ongoing trusteeship, so as not to contravene Congress' policy decision and the public interest. *See Teamsters Local Union No. 406 v. Crane,* 848 F.2d 709, 714 (6th Cir.1988) (absent dishonesty or bad faith, interference in the trusteeship would "unreasonably impair the independence of labor unions") (quoting S.Rep. No. 86–187, at 18 (1959)). Further, the effect of the relief requested here would amount to the Court's impermissible intervention in an ongoing arbitration proceeding. *See, e.g., United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 36–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (when parties to a collective bargaining agreement have agreed to arbitration, courts play a limited role when asked to intervene).

## CONCLUSION

On balance, all factors weigh against the granting of injunctive relief. Accordingly, plaintiff's motion for a temporary restraining order or preliminary injunction will be denied.

A separate Order accompanies this Memorandum Opinion.

## *ORDER*

For the reasons discussed in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that plaintiff's request for an evidentiary hearing is **DENIED**; and it is

**FURTHER ORDERED** that plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED.**

**This is a final appealable Order.** 28 U.S.C. § 1292(a)(1).