**NATIONAL PROPANE GAS ASSOCIATION, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., Defendants.**

**Civil Action No. 08–99 (RWR).**

United States District Court, District of Columbia.

Jan. 20, 2008.

Chris S. Leason, Jerald Clive Thompson, Gallagher & Kennedy, P.A., Phoenix, AZ, for Plaintiffs.

Elizabeth Jay Kelhoffer, U.S. Department of Justice, Federal Programs Branch, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD W. ROBERTS, District Judge.

Plaintiffs, the National Propane Gas Association and Gorhams', Inc., doing business as Northwest Gas (collectively "NPGA"),[1] have sued the United States Department of Homeland Security and its Secretary, Michael Chertoff (collectively "DHS"), challenging the Chemical Facility Anti–Terrorism Standards ("CFATS") final rules regulating certain propane facilities as arbitrary, capricious and unlawful. NPGA moves for a temporary restraining order and preliminary injunction to enjoin the implementation and enforcement of the rules. Because NPGA has failed to demonstrate any irreparable harm or that other factors entitle it to the emergency relief sought, its motion for a temporary restraining order and preliminary injunction will be denied.

## BACKGROUND

The Department of Homeland Security Appropriations Act ("Act") required DHS to "issue interim final regulations establishing risk-based performance standards for security of chemical facilities and requiring vulnerability assessments and the development and implementation of site security plans for chemical facilities[.]" Pub.L. No. 109–295, § 550(a). DHS issued an interim final rule implementing the CFATS. 72 Fed.Reg. 17, 688 (Apr. 9, 2007). Under the CFATS, a "covered chemical facility" ("CCF")—a chemical facility deemed to present high levels of security risk[2]—is subjected to certain special requirements.[3] In order to determine whether a facility should be deemed a CCF, DHS requires facilities possessing chemicals designated as "chemical of interest" ("COIs") at particular quantities to submit information via an internet-based form called a "Top–Screen" so that DHS may determine whether the facility "presents a high level of security risk." *See* 6 C.F.R. §§ 27.200(b)(2), 27.205.

DHS published an appendix to the CFATS on November 20, 2007, designating propane as a COI. 6 C.F.R. pt. 27, app. A. That appendix and the CFATS direct any facility that possesses or plans to possess more than 60,000 pounds of propane to submit a Top–Screen no later than January 22, 2008. Should a facility fail to meet the deadline, it "may be subject to civil penalties pursuant to § 27.300, audit and inspection under § 27.250, or, if appropriate, and order to cease operations under § 27.300." 6 C.F.R. § 27.200(c)(1).

Responding to the November 20, 2007 publication, NPGA filed suit against DHS on January 17, 2008 and moved for a temporary restraining order and preliminary injunction, seeking to enjoin the implementation and enforcement of the CFATS as

---

1. National Propane Gas Association is a national trade association representing the United States' propane industry. Northwest Gas is an association of Minnesota propane and natural gas distribution companies.

2. Any "establishment" that "possesses or plans to possess ... a quantity of a chemical substance determined by the Secretary to be potentially dangerous or that meets other risk-related criteria identified by the Department" is considered a "chemical facility" or "facility." 6 C.F.R. § 27.105. If the chemical facility is "determined by the Assistant Secre-

tary to present high levels of security risk" or "is presumptively high risk[,]" it is considered a CCF. *Id.*

3. For example, many CCFs must 1) conduct a "Security Vulnerability Assessment" that identifies facility security vulnerabilities; 2) develop and implement a "Site Security Plan" that identifies measures that satisfy the identified performance standards; 3) maintain compliance records, and 4) be subjected to DHS inspections. *See* 6 C.F.R. §§ 27.215, 27.225, 27.245, 27.210(b), 27.250, 27.225.

applied to any facility possessing more than 60,000 pounds of propane. NPGA argues that the CFATS represent a usurpation of DHS's authority under the Act and the CFATS rulemaking process violated the Administrative Procedure Act ("APA"). (*See* Pls.' Application for a TRO and Prelim. and Permanent Inj. 16 ("Pls.' Mot.").)

### DISCUSSION

"[I]njunctive relief is an 'extraordinary and drastic remedy,' and it is the movant's obligation to justify, '*by a clear showing*,' the court's use of such a measure." *Citizens United v. FEC*, Civil Action No. 07–2240 (ARR, RCL, RWR), 530 F.Supp.2d 274, at 278, 2008 WL 134226, at *2 (D.D.C. Jan. 16, 2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). "The court will not issue such relief unless the movant shows that it has '1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" *Citizens United*, 530 F.Supp.2d at 277–78, 2008 WL 134226, at *2 (citing *Omar v. Harvey*, 479 F.3d 1, 18 (D.C.Cir. 2007) (citation omitted)). "The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor." *In re Navy Chaplaincy*, 516 F.Supp.2d 119, 122 (D.D.C.2007) (citing *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C.Cir.2005)). However, "[a] movant must demonstrate at least some injury" to warrant securing an injunction. *In re Navy Chaplaincy*, 516 F.Supp.2d at 122 (citations and internal quotations omitted). "[I]f a party makes no showing of irreparable injury,

the court may deny the motion for injunctive relief without considering the other factors." *Id.*

"If the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay, [a] district court should be reluctant to award relief." *Natural Resources Defense Council v. Pena*, 147 F.3d 1012, 1026 (D.C.Cir.1998). "A court may deny a plaintiff's application for a temporary restraining order or preliminary injunction without first providing a hearing on the merits when the record is sufficient to demonstrate a lack of right to relief." *Smith v. Harvey*, Civil Action No. 06–1117(RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006) (citing *Johnson v. Holway*, 329 F.Supp.2d 12, 14 n. 1 (D.D.C. 2004); Local Civil Rule 65.1(d) (allowing a court to decide a motion for preliminary injunction on the papers before holding a hearing)).

NPGA argues that it has a strong likelihood of success on the merits because DHS's rulemaking process for the CFATS was arbitrary and capricious and violated the APA. NPGA also argues that DHS exceeded its authority under the Act by superseding the Chemical Safety Information, Site Security and Fuels Regulatory Relief Act. (*See* Pls.' Mot. 8, 16.) Assuming, without deciding, that NPGA can demonstrate a likelihood of success of the merits, however, NPGA has failed to show—or even argue, for that matter—that it would suffer irreparable harm should the CFATS be implemented and enforced as scheduled. Although civil penalties could certainly qualify as harmful to NPGA, the D.C. Circuit has made clear that "mere injuries, however substantial, in terms of money . . . are not enough" to constitute irreparable harm. *Wis. Gas Go. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C.Cir.1985) (citation omitted).[4] Similarly, NPGA has failed to show

---

4. Recoverable monetary loss may constitute     irreparable harm where the loss threatens the

how audits and inspections, or orders to cease operations, could qualify as irreparable harm. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

 Accordingly, there is little need to evaluate in detail the likelihood of success here since NPGA wholly fails to argue or demonstrate any irreparable harm. Not only is any urgency undermined by its choice to wait nearly sixty days after propane was designated as a COI before seeking relief, *see Pena*, 147 F.3d at 1026, any harm caused by the application of the CFATS to chemical facilities at issue can be remedied at law. Nor do the remaining factors tilt in favor of granting the relief plaintiffs seek. NPGA argues that there would be no harm to DHS in striking the CFATS as they apply to propane, and that an injunction would be in the public interest because it would allow "DHS the time to properly evaluate whether the regulation of propane under the CFATS is warranted[.]" (Pls.Mot.17.) However, there is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct an agency to develop and enforce. *See, e.g., Hunter v. Fed. Energy Regulatory Comm'n*, 527 F.Supp.2d 9, 18 (D.D.C. 2007) ("Given ... the harm that issuing an injunction would cause to [an agency's] enforcement authority, the Court finds that the public interest would not be served by issuing an injunction at this time."). The balance of factors weighs decidedly against issuing a temporary restraining order or preliminary injunction.

very existence of the movant's business. *See Wis. Gas Co.*, 758 F.2d at 674. However,

## CONCLUSION AND ORDER

Because NPGA has failed to justify by a clear showing the injunctive relief it seeks, NPGA's motion for a temporary restraining order and preliminary injunction will be denied. Accordingly, it is hereby

ORDERED that NPGA's motion [3] for a temporary restraining order and preliminary injunction be, and hereby is, DENIED.

NPGA does not argue that it faces such a threat.